GEORGE S. MCMAHON & another[1] vs. MORRIS GLIXMAN.

Worcester. May 10, 1979. — August 27, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, WILKINS, LIACOS,
& ABRAMS, JJ.

*Medical Malpractice*, Tribunal, Bond, Statute of limitations. *Negligence*, Medical malpractice. *Limitations, Statute of.*

Upon appeal from a decision of a medical malpractice tribunal, the plaintiffs were entitled to a review of their claim of errors by the tribunal even though they had not filed a bond as ordered by the tribunal as a condition precedent to pursuing the usual judicial process. [62-64]

In the circumstances, a medical malpractice tribunal, convened pursuant to G. L. c. 231, § 60B, erred in concluding that the evidence before it was insufficient to raise a legitimate question of liability appropriate for judicial inquiry. [64-66]

The issue whether a plaintiff's claim was barred by the statute of limitations was not within the jurisdiction of a medical malpractice tribunal convened pursuant to G. L. c. 231, § 60B. [66-69]

CIVIL ACTION commenced in the Superior Court on March 30, 1978.

A motion for judgment was allowed by *McCooey*, J., a District Court judge sitting under statutory authority.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Carroll E. Ayers* for the plaintiffs.

*William C. O'Neil, Jr.* (*Paul P. O'Connor* with him) for the defendant.

QUIRICO, J. The plaintiff, George S. McMahon, seeks to recover damages for personal injuries, and his wife, June A. McMahon, seeks to recover for loss of consortium, as a result

---

[1] June A. McMahon, the wife of George S. McMahon.

of the alleged malpractice of the defendant, an optometrist. The action was heard by a medical malpractice tribunal convened pursuant to G. L. c. 231, § 60B, which found that the evidence (offered by the plaintiffs) "is not sufficient to raise a legitimate question of liability appropriate for judicial inquiry." The judge who sat with the panel thereupon ordered that, as a condition precedent to pursuing the usual judicial process, the plaintiffs file a bond "payable to the defendant for costs assessed, including witness and experts fees and attorneys fees if the plaintiff does not prevail in the final judgment." See G. L. c. 231, § 60B, inserted by St. 1975, c. 362, § 5.

The plaintiffs did not file the required bond, whereupon the defendant filed a motion that judgment be entered in his favor. The motion was allowed, and the plaintiffs appealed from the judgment thus entered. We transferred the case here on our own motion. G. L. c. 211A, § 10A.

For reasons discussed below, we hold that there was error in the proceedings before the tribunal, that the judgment should be reversed, and that the case should be remanded for further proceedings consistent with this opinion.

This action was commenced by a complaint entered in the Superior Court on March 30, 1978. In count one of the complaint George S. McMahon (the plaintiff) alleges that the defendant is a duly licensed optometrist practicing in the Commonwealth; that on or about June 25, 1975, and on diverse dates before and after that date, the defendant undertook to diagnose, care for, and treat the plaintiff for complaints concerning his eyes; that the defendant's services were based on a contractual agreement and in consideration of a fee to be paid by the plaintiff; that the defendant performed the diagnosis and treatment of the plaintiff in a negligent and careless manner in various respects, including particularly the defendant's alleged failure to diagnose the plaintiff's glaucoma and other conditions and complications; and that, as a result, the plaintiff suffered great pain, became permanently blind in one eye, lost substantial sight in his other eye, and incurred large expenses for medical

care and attention. In count two, the plaintiff's wife adopted the allegations made by her husband in count one and added that, by reason of the injuries and blindness sustained by her husband, she suffered the loss of his services, society, affection, companionship, relations, and consortium.

The defendant by his answer generally denied all of the material allegations of the plaintiffs and further answered that "this action was not commenced within the time required by the laws made and provided therefor[ ]." See G. L. c. 260 § 4, as amended through St. 1973, c. 777, §§ 3 and 4 (three-year limitation of malpractice actions against certain defendants for causes of action arising after January 1, 1974). A motion for summary judgment was heard and denied on the affidavit of the defendant that he had not dealt with the plaintiff after August 30, 1974, and the counter affidavit of the plaintiff that the defendant performed professional services for him during the summer of 1975.[2] See Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974) (summary judgment may be rendered if "there is no genuine issue as to any material fact").

1. *Entitlement to appellate review.* Before considering the plaintiffs' claim of errors by the tribunal, we deal with the defendant's claim that the plaintiffs are not properly before the full court because they have failed to exhaust judicial processes available to them in the trial court and have not filed a bond or bonds as ordered by the judge who sat with the tribunal.

The record shows that on May 26, 1978, which was three days after the tribunal hearing and about ten days before its decision, the judge entered an order that "[a] finding having been made for the defendant, it is ORDERED that the plaintiffs file a bond in the amount of Two thousand dollars

---

[2] We need not, and do not, decide whether the ruling on the motion for summary judgment alone would preclude reconsideration of the statute of limitations issue by the screening tribunal. Rather, our holding is grounded on the lack of jurisdiction of the tribunal to consider that issue in the first place.

($2,000.00) within thirty (30) days if they wish to pursue their claim, otherwise the action is dismissed." The decision of the tribunal was not filed until June 6, 1978, and on that date the same judge entered an order identical to that of May 26, 1978, except that it required a bond in the amount of $4,000. The record indicates no attempt to reconcile these two orders. We do not attempt to determine whether the net effect of these orders was that the plaintiffs were required to file a bond of $2,000, $4,000, or $6,000, but we do express the belief that the litigants were entitled to a record which would not give rise to such doubts. The plaintiffs filed no bond or bonds, and neither they nor the defendant made any effort to have the doubt clarified. The failure to file a bond ultimately resulted in the entry of judgment as noted above.

The defendant states in his brief that the plaintiffs sought relief from the bond order from a single justice of the Appeals Court under G. L. c. 231, § 118, and that such relief was denied. Since this fact does not appear anywhere in the record of the appeal before us, we do not consider it further.

The defendant argues that the order or orders for the filing of a bond are interlocutory orders and that the plaintiffs may not neglect or refuse to comply with them and then, after judgment, seek appellate review of the orders in the Appeals Court. The principal question before us is whether the decision by the tribunal is tainted by legal error.[3] By statute, "the decision of the tribunal shall be admissible as evidence at a trial." G. L. c. 231, § 60B. We have not heretofore encumbered the right to seek review of such a decision by a requirement that the plaintiff first file the required bond and then try the case. If a plaintiff elects to have the alleged legal errors reviewed on appeal without

___

[3] It would have been desirable for the plaintiffs to have sought clarification of or relief from the two bond orders entered in the trial court. Their failure to do so does not, however, deprive them of standing to pursue this appeal: there is more at stake in this case than the mere amount of the bond, regardless of whether the plaintiffs can or cannot afford to post it.

first filing a bond and going to trial, knowing that he thereby runs the risk of being out of court entirely if his claim of error by the tribunal is decided adversely to him, we believe that he is entitled to such review. On the other hand, he may instead file his bond, go to trial, and, if he loses, have the alleged error by the tribunal reviewed along with any other alleged errors arising from the trial. It is for him to decide whether he is willing to assume the potentially fatal risks of pretrial review after failing or refusing to file a bond. In this case the plaintiffs have elected to assume those risks, as have plaintiffs in earlier cases. See *Little* v. *Rosenthal*, 376 Mass. 573, 574 (1978); *Paro* v. *Longwood Hosp.*, 373 Mass. 645, 646-647 (1977). Having done so, they cannot later elect to file the required bond or bonds if we hold that the tribunal did not commit error.

2. *Sufficiency of evidence before the tribunal.* One week after the denial of the defendant's motion for summary judgment, the action was referred to the medical malpractice tribunal convened under G. L. c. 231, § 60B.[4]

At the hearing before the tribunal, counsel for the plaintiff made an offer of proof which included copies of the following documents: (a) the affidavits which had been filed by the plaintiff and the defendant on the motion for summary judgment described above, (b) an affidavit by Dr. Forrest Seavey, an optometrist, (c) a copy of a record of the Fairlawn Hospital for the period from January 26 to 30, 1978, when the plaintiff was confined there for surgery for a glaucoma condition in his left eye, and (d) a report by Dr. Eugene B. Epstein, an

---

[4] The first paragraph of § 60B provides as follows:

"Every action for malpractice, error or mistake against a provider of health care shall be heard by a tribunal consisting of a single justice of the superior court, a physician licensed to practice medicine in the commonwealth under the provisions of section two of chapter one hundred and twelve and an attorney authorized to practice law in the commonwealth, at which hearing the plaintiff shall present an offer of proof and said tribunal shall determine if the evidence presented if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial inquiry or whether the plaintiff's case is merely an unfortunate medical result."

ophthalmologist, dated April 14, 1978, describing his first examination of the plaintiff on October 31, 1977, and his following treatment and surgery for the glaucoma condition on January 27, 1978. In addition, the tribunal also heard testimony by Dr. Epstein and the plaintiff.

We summarize briefly the proof offered by the plaintiff, without attempting to pass on the weight or credibility of any of the evidence offered. The plaintiff had been a patient of the defendant optometrist for a number of years. During that period of time the defendant had examined the plaintiff's eyes and prescribed eyeglasses for him a number of times, the last time being about May of 1974. The plaintiff returned to the defendant with complaints of blurred vision about March and in June, 1975. The defendant put some drops into his eyes and assured him that no problem existed. The plaintiff has no records relating to 1975, and he is relying on his memory in this regard. On October 31, 1977, the plaintiff was examined by Dr. Epstein for complaints of constant blurring in his left eye, frontal headaches, occasionally seeing halos around street lights, and watering of his eyes. He had bilateral glaucoma which was far advanced in his left eye. The optic disc of the left eye was irreversibly damaged. The glaucoma condition in the right eye had not advanced to the same degree as the left. Dr. Epstein performed surgery on the left eye for the glaucoma condition on January 27, 1978. The physical signs visible to a trained optometrist would have indicated the presence of glaucoma as early as June, 1975, and earlier, even in the absence of any complaints by a patient. Dr. Epstein stated in his report: "In my opinion, precious time has been lost by the optometrist not recognizing, or having an index of suspicion for Mr. McMahon's symptoms, which are classical for glaucoma. In addition he was lulled into a sense of security by having diagnostic drops instilled, and by having been given unwarranted reassurance. Ophthalmological consultation should have been sought in any event immediately." Dr. Seavey in his report reviewed the record of the Fairlawn Hospital and the written report by Dr. Ep-

stein, and he summarized the symptoms and complaints of the plaintiff contained therein. He then stated: "The optometrist is morally and ethically obligated to refer a patient with suspicious symptoms or clinical data to an ophthalmologist if glaucoma is suspected. In my opinion Dr. Glixman did not conform to the standards of his profession if glaucoma was suspected by history, symptoms or clinical data and the patient was not informed and referred to the ophthalmologist of his choice."

Having received the evidence which we have summarized above, it became the duty of the tribunal, by virtue of the language of G. L. c. 231, § 60B, to evaluate it in the manner in which a judge presiding at a civil trial would do "in ruling on a defendant's motion for directed verdict." *Little v. Rosenthal, supra* at 577-579. Applying that test to the evidence, we hold that the tribunal was required to conclude that the evidence was sufficient, if properly substantiated, "to raise a legitimate question of liability appropriate for judicial inquiry." G. L. c. 231, § 60B. The tribunal held instead that the evidence was not sufficient for that purpose. We hold that the decision of the tribunal was erroneous, that it should be struck from the record and that the required decision should be entered in lieu thereof.

3. *Extraneous evidence before the tribunal.* This case became unnecessarily complicated because the tribunal permitted evidence and argument on the question whether the plaintiff's action was barred by the statute of limitations, G. L. c. 260, § 4. The answer to that question depends on whether the last date on which the plaintiff consulted with, or received any services from, the defendant was within the three years prior to March 30, 1978, when this action was started. The plaintiff contends that he last consulted the defendant in June, 1975, whereas the defendant contends that it was in April and May, 1974. The tribunal devoted considerable time to this issue and requested the plaintiff to search his records and send them any bills, receipts, cancelled checks, or other papers bearing on the issue. The

attorney member of the tribunal asked, "[D]oes the plaintiff have anything to give us, apart from a memory exercise, that demonstrates that he saw the doctor at sometime within three years of the running of the Statute of Limitations, because, while we are dealing with an offer of proof, if it's a Statute of Limitations problem, I think it may as well be faced by the tribunal." About one-half of the fifty-five page transcript of the hearing before the tribunal is devoted to testimony, discussion, or argument on the issue of the statute of limitations.

In arguing before the tribunal, counsel for the plaintiff contended that the question whether his action was barred by the statute of limitations was not properly before the tribunal, and he asked that the tribunal, in making its decision, state reasons therefor, so that if the decision was based solely on the statute of limitations he might be able to appeal on that ground. Two days after the hearing counsel filed a written motion requesting the tribunal to make specific findings of fact, and suggesting that the issues before it were whether there was sufficient proof (a) that the defendant was negligent and (b) that the statute of limitations had not expired.

The decision of the tribunal, issued two weeks after the hearing, first gave the date and place of the hearing and the names of the members of the tribunal, and then it stated that counsel for the parties were present. The remainder of the decision stated: "Upon the offer of proof presented by the plaintiffs, including written reports, hospital records and medical testimony, the Tribunal finds that the evidence is not sufficient to raise a legitimate question of liability appropriate for judicial inquiry." It contained no other findings of fact, discussion, or rulings of law. Although the tribunal spent much time on the issue of the statute of limitations, it gave no indication whether that issue was a factor which influenced its decision in favor of the defendant.

We hold that the issue whether the plaintiff's claim was barred by the statute of limitations was not within the jurisdiction of the tribunal, that it was error for the tribunal to

invite or receive evidence bearing thereon, and that it would be error for such a tribunal to consider the issue as a factor in its ultimate decision. This is an issue which may be raised before the court at the trial of the action.

We faced a similar question in *Salem Orthopedic Surgeons, Inc.* v. *Quinn*, 377 Mass. 514 (1979). In that case, we noted that the parties had "apparently assumed that, if [the patient's] claim were referred to a tribunal, the tribunal would consider the evidence bearing on whether [the physician] made an express contract." *Id.* at 521. We then stated: "The statutory function of the tribunal is, however, to separate malpractice claims into two classes: those appropriate for judicial evaluation and those involving merely an unfortunate medical result. . . . In performing this function, the tribunal may examine predominately medical evidence. . . . The medical focus of a § 60B tribunal is further emphasized by the requirement that one member be a physician or, when the defendant is not himself a physician, a representative of the defendant's field of health care providers. . . . All of these factors are strongly indicative of a legislative intention that a tribunal should evaluate only the medical aspects of a malpractice claim for the purpose of distinguishing between cases of tortious malpractice and those involving 'merely an unfortunate medical result.'" *Id.*

On numerous occasions, we have said that the apparent legislative purpose in enacting legislation requiring screening "was to discourage frivolous claims whose defense would tend to increase premium charges for medical malpractice insurance." *Austin* v. *Boston Univ. Hosp.*, 372 Mass. 654, 655 n.4 (1977). Accord, *Salem Orthopedic Surgeons, Inc.* v. *Quinn*, *supra* at 520; *Little* v. *Rosenthal*, *supra* at 577; *Paro* v. *Longwood Hosp.*, *supra* at 651, 655. It is true, as the defendant argues, that allowing the tribunal to examine legal and factual issues beyond the purely medical questions raised in a malpractice suit will serve that purpose. Carried to its logical conclusion, however, the defendant's argument would turn the tribunal procedure into

a miniature trial of all issues. Although this "trial" would presumably be quicker and cheaper than a full-blown trial to a jury, we cannot believe that the Legislature envisaged so broad a role for the tribunal.[5] Rather, we think the language quoted above from the *Quinn* case should control here: the tribunal should simply examine the evidence proposed to be offered on behalf of the patient to determine whether that evidence, "if properly substantiated," would establish a case of "malpractice, error or mistake" against the health care provider or whether, instead, the patient merely experienced "an unfortunate medical result." 377 Mass. at 517. So narrow a focus will hold the cost of defending frivolous claims within reasonable bounds and thereby truly serve the legislative purpose.

4. *Conclusion.* For the reasons stated above, we order: (a) that the judgment entered on July 24, 1978, dismissing the action because of the plaintiffs' failure to file a bond or bonds be vacated, (b) that the orders entered on May 26, 1978, and June 6, 1978, requiring the plaintiffs to file a bond of $2,000 and $4,000, respectively, be vacated, (c) that the findings and decision made by the medical malpractice tribunal on June 6, 1978, be reversed, (d) that there be substituted therefor a finding and decision that "Upon the offer of proof presented by the plaintiffs, including written reports, hospital records, and medical testimony, the evidence thus offered and presented, if properly substantiated, is sufficient to raise a legitimate question of liability

---

[5] The intermediate appellate court in Florida has also concluded that the question whether the statute of limitations has run is beyond the competence of a medical mediation panel established pursuant to Fla. Stat. Ann. § 768.44 (West Supp. 1979). See *Drs. Howarth & Scott, P.A.* v. *Edwards*, 353 So.2d 175, 176 (Fla. Dist. Ct. App. 1977) (motion for summary judgment); *Floyd* v. *Goss*, 352 So.2d 1189 (Fla. Dist. Ct. App. 1977) (motion for judgment on the pleadings). The Florida statute is not precisely similar to our own, however, in that it spells out in detail the various powers of the judicial member. This fact was significant in the *Floyd* decision and may serve to distinguish both of the Florida cases from the present case.

appropriate for judicial inquiry," and (e) that the case be remanded to the Superior Court for further proceedings therein.

*So ordered.*