MARTHA J. KAPP *vs.* H. THOMAS BALLANTINE & others.[1]

Suffolk. December 5, 1979. — March 20, 1980.

Present: HENNESSEY, C.J., QUIRICO, WILKINS, LIACOS, & ABRAMS, JJ.

*Medical Malpractice,* Tribunal, Bond. *Negligence,* Medical malpractice.
*Witness,* Expert. *Doctor. Hospital.*

The judge presiding over a medical malpractice tribunal established
under G. L. c. 231, § 60B, is not obliged to rule upon requests for rul-
ings, although he should instruct the members of the tribunal upon the
applicable law. [189]

In an action for medical malpractice against a hospital and physicians,
plaintiff had a right to appeal from a Superior Court judgment dis-
missing her action for failure to file the bond ordered by a medical
malpractice tribunal under the pursuit of claims provision in G. L.
c. 231, § 60B, following the tribunal's finding for the defendants.
[190-191]

In an action for medical malpractice, after a finding for the defendant by
a medical malpractice tribunal, the plaintiff would have a right, upon
motion and a determination by the court that the plaintiff is indigent,
to appeal the court's failure to reduce appropriately the amount of the
bond required of her to pursue the claim. [191]

The function of a medical malpractice tribunal under G. L. c. 231, § 60B,
is limited to an ascertainment whether the plaintiff's offer of proof is
sufficient as to any one of the bases of recovery alleged in the com-
plaint. [192]

In an action for medical malpractice, the tribunal established under
G. L. c. 231, § 60B, should give consideration to the proffered opin-
ion of an expert if the offer of proof is sufficient to show that a trial
judge might properly rule that the qualifications of the witness are suf-
ficient. [192]

The offer of proof by a patient of negligence on the part of a physician
concerning the electric shock therapy administered and a brain opera-
tion performed was adequate for the medical malpractice tribunal es-
tablished under G. L. c. 231, § 60B, to determine that the evidence
presented was sufficient to raise a legitimate question of liability,
where the patient's experts stated essentially that the physician's diag-

---

[1] Walter Cassidy, Raymond Adams, Bernard Levy, and Massachusetts
General Hospital.

nosis of her malady was incorrect and the operation was unwarranted, leading to a deterioration of her intellectual capacity and mental efficiency. [193]

The offer of proof by a patient of negligence of a physician concerning the electric shock therapy administered, and a brain operation performed, was sufficient for the medical practice tribunal established under G. L. c. 231, § 60B, to determine that the evidence raised a legitimate question of liability, where evidence was proffered that the number of electric shock treatments ordered by the physician was "grossly excessive," that the psychiatric treatments were "grossly improper medical care," and that the electric shock treatments were based on an untenable diagnosis and its pursuit before trying other remedies was "irresponsible." [194]

The offer of proof by a patient of negligence of a physician concerning the electric shock therapy administered, and a brain operation performed, was sufficient for the medical practice tribunal established under G. L. c. 231, § 60B, to determine that the evidence presented raised a legitimate question of liability, where all four of the plaintiff's experts wrote that the physician's diagnosis of "severe endogenous depression" was incorrect or "untenable," and so extreme that it precluded less serious diagnosis ruling out surgical or electric shock treatments. [194]

The offer of proof by a patient of negligence of a physician concerning the electric shock therapy administered, and a brain operation performed, was not adequate for the medical practice tribunal established under G. L. c. 231, § 60B, to determine that the evidence presented of the physician's liability was sufficient, where the patient's arguments were only that the physician should somehow have prevented the surgical procedure, and that he was responsible with others as part of a consulting team. [194]

The offer of proof by a patient of negligence on the part of a hospital concerning the electric shock therapy administered, and a brain operation performed, was not adequate for the medical practice tribunal established under G. L. c. 231, § 60B, to determine that the evidence presented of the hospital's liability was sufficient, where the patient's presentation was solely arguments that defendant physicians were agents or servants of the hospital and that it had a duty to review or control the research or treatment activities of physicians within the hospital. [195]

In an action for medical malpractice by a patient against three physicians, this court ordered vacated the Superior Court judgment dismissing the action because of the plaintiff's failure to file bonds following a finding for the defendants and an order by the medical malpractice tribunal under the pursuit of claims provision in G. L. c. 231, § 60B, and ordered vacated the tribunal's order, and ordered substitution of a find-

ing and decision that upon the offers of proof presented by the plaintiff the evidence, if properly substantiated, is sufficient to raise a legitimate question of liability appropriate for judicial inquiry. [196]

In an action for medical malpractice by a patient against a physician and a hospital, this court affirmed a Superior Court judgment dismissing the action because of the plaintiff's failure to file bonds following a finding for the defendants and an order by the medical malpractice tribunal under the pursuit of claims provision in G. L. c. 231, § 60B, and ordered the case remanded to the Superior Court for further proceedings. [196]

CIVIL ACTION commenced in the Superior Court on July 15, 1977.

A motion to dismiss was heard by *Nolan*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Joan Rachlin* (*Lee D. Goldstein* with her) for the plaintiff.

*Stephen A. Moore* for Walter Cassidy & others.

*Marcia Sneden* for H. Thomas Ballantine, Jr.

*Joseph J. Walsh* for the Massachusetts General Hospital.

HENNESSEY, C.J.    The plaintiff appeals from a judgment entered in the Superior Court dismissing her action for medical malpractice against a hospital and four physicians. The dismissal followed her failure to provide a bond in the amount of $2,000 as to each defendant, as ordered by a tribunal acting under G. L. c. 231, § 60B, inserted by St. 1975, c. 362, § 5.[2]  Some of the defendants assert that the plaintiff

---

[2] The statute provides in pertinent part: "Every action for malpractice, error or mistake against a provider of health care shall be heard by a tribunal consisting of a single justice of the superior court, a physician licensed to practice medicine in the commonwealth under the provisions of section two of chapter one hundred and twelve and an attorney authorized to practice law in the commonwealth, at which hearing the plaintiff shall present an offer of proof and said tribunal shall determine if the evidence presented if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial inquiry or whether the plaintiff's case is merely an unfortunate medical result.

". . . .

"Each such action for malpractice shall be heard by said tribunal within fifteen days after the defendant's answer has been filed.  Substantial

has no right of appeal in these circumstances, and all of the
defendants argue that the tribunal was correct in its conclu-
sions that the plaintiff must file bonds because her offer of
proof before the tribunal was inadequate as to each of the
defendants. We conclude that the plaintiff has a right of
appeal; that there was no error in the tribunal's finding of
inadequacy as to the offer of proof as to the defendant
hospital and as to one of the defendant doctors (Dr. Levy);
and that there was error in the tribunal's findings as to the
other three physicians (Drs. Ballantine, Adams, and Cassi-
dy), since there was a sufficient offer of proof as to them.[3]

The plaintiff's allegations concern electroconvulsive (elec-
tric shock) therapy administered to her, and a brain opera-
tion performed upon her, in 1974. The operation was a
stereotactic cingulotomy, commonly referred to as a type of
experimental "psychosurgery." The plaintiff had suffered

---

evidence shall mean such evidence as a reasonable person might ac-
cept as adequate to support a conclusion. Admissible evidence shall in-
clude, but not be limited to, hospital and medical records, nurses' notes,
x-rays and other records kept in the usual course of the practice of the
health care provider without the necessity for other identification or
authentication, statements of fact or opinion on a subject contained in a
published treatise, periodical, book or pamphlet or statements by experts
without the necessity of such experts appearing at said hearing. . . .

"If a finding is made for the defendant the plaintiff may pursue the
claim through the usual judicial process only upon filing bond in the
amount of two thousand dollars secured by cash or its equivalent with the
clerk of the court in which the case is pending, payable to the defendant
for costs assessed including witness and experts fees and attorneys fees if
the plaintiff does not prevail in the final judgment. Said single justice
may, within his discretion, increase the amount of the bond required to be
filed. If said bond is not posted within thirty days of the tribunal's find-
ing the action shall be dismissed. Upon motion filed by the plaintiff, and
a determination by the court that the plaintiff is indigent said justice may
reduce the amount of the bond but may not eliminate the requirement
thereof."

[3] The plaintiff also argues that the judge presiding over the tribunal
should have ruled upon certain requests for rulings filed by the plaintiff.
We discern no such obligation upon the judge, although it is clear within
the statutory scheme that the judge should instruct the members of the
tribunal, during their deliberations, upon the applicable law, to the ex-
tent it appears to be necessary.

for at least five years prior to 1974 from severe mental depression and severe physical pain in her head, neck, and shoulders. She had a history of suicidal tendencies. She had received therapy, including various medications, from various psychiatrists and psychologists prior to 1974.

The plaintiff's complaint alleges in substance that the electric shock therapy was unnecessary, or at least excessively applied; that the surgical procedure was unjustifiable; and that she has been caused permanent physical and mental damage. She alleges several bases for recovery against the various defendants, viz.: negligence, assault and battery, invasion of privacy, intentional infliction of emotional distress, and misrepresentation.

A hearing was held before a medical malpractice tribunal which was presided over by a Superior Court judge. See G. L. c. 231, § 60B, *supra* note 2. The plaintiff's offer of proof consisted of statements made by herself, her mother, and some friends who knew her before and after the surgical procedure. She also presented voluminous hospital records, as well as written opinions from several physicians and a psychologist.[4] The tribunal found that the offer of proof and the evidence submitted, even if properly substantiated, were not sufficient to raise a legitimate question of liability appropriate for judicial inquiry. Consequently, the tribunal ordered that bonds be filed, and the action was later dismissed when the plaintiff failed to file the bonds.

1. *Right of appeal.* The defendants' argument that the plaintiff has no right of appeal is without merit. This court has already decided that a plaintiff has a right of appeal in these circumstances. In *McMahon* v. *Glixman*, 379 Mass. 60, 63-64 (1979), we said: "If a plaintiff elects to have the

---

[4] This is the type of matter obviously contemplated by the Legislature as constituting an offer of proof under the statute. A preliminary trial is not called for, nor is a consideration of the "evidence" in the full sense of the term. On the other hand, it is not sufficient for plaintiff's counsel to make a verbal offer of proof, or to state sufficient allegations in the complaint. The statute contemplates documentary presentation, such as doctors' reports, as acceptable, although oral testimony is not precluded.

alleged legal errors reviewed on appeal without first filing a bond and going to trial, knowing that he thereby runs the risk of being out of court entirely if his claim of error by the tribunal is decided adversely to him, we believe that he is entitled to . . . review. On the other hand, he may instead file his bond, go to trial, and, if he loses, have the alleged error by the tribunal reviewed along with any other alleged errors arising from the trial. It is for him to decide whether he is willing to assume the potentially fatal risks of pretrial review after failing or refusing to file a bond."

Although it is not material in this case, we add that a plaintiff would also have a right of appeal at this stage of the proceedings on the issue whether there was abuse of discretion in a failure to reduce the required bond appropriately, on proof of the plaintiff's indigency.

2. *Standard of review.* At the time the tribunal proceedings were held and its decision was rendered, the parties did not have the benefit of our opinion in the case of *Little* v. *Rosenthal,* 376 Mass. 573 (1978). In that case we said that "the tribunal's task should be compared, not to the process of dismissal [for failure of the plaintiff to allege in the complaint grounds on which relief may be granted] . . . but rather to the trial judge's function in ruling on a defendant's motion for directed verdict." *Id.* at 578. See also *McMahon* v. *Glixman, supra* at 66. The plaintiff argued before the tribunal and before this court for a standard less stringent than *Little* dictates, asserting that it should be sufficient to eliminate the bond requirement if the offer of proof discloses a "nonfrivolous" claim. She did not define the meaning of "nonfrivolous." The tribunal, on the other hand, in the cases of Drs. Ballantine, Adams, and Cassidy, may have engaged, not in an examination of the sufficiency of the evidence as later required by *Little,* but rather in an impermissible appraisal of the weight and credibility of the evidence.[5]

---

[5] Even from the sparse information presented in the offer of proof, it is apparent that if the case comes to trial there will be sharp controversy on the major issues such as the correct diagnosis, the suitability of surgical

Although the complaint alleges several theories or bases of recovery against some of the defendants, we think the tribunal's function under § 60B is limited to the ascertainment whether the offer of proof is sufficient as to any one of the theories.[6]   Compare Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), and Mass. R. Civ. P. 56, 365 Mass. 824 (1974), wherein the several grounds for recovery may be examined and motions to dismiss may be allowed in whole or in part for failure of sufficient allegations (rule 12 [b] [6]) or insufficiency of affidavits as to proof (rule 56).

The tribunal in this case received from the plaintiff the written reports and opinions of four medical practitioners, each of whom had appended to his report details of his background, professional training, and qualifications. These summaries showed that one of the four is a neurosurgeon, two are psychiatrists, and one is a psychologist. We appreciate that the qualifications of an expert witness to testify, and consequently the admissibility of his opinions, are ordinarily within the discretion of the trial judge. In our view, the tribunal should give consideration to the proffered opinion of an expert if the offer of proof is sufficient to show that a trial judge in his discretion *might properly rule* that the qualifications of the witness are sufficient. Thus, the opinions of an expert are to be received even if the tribunal (or its presiding judge) might decide that if the exercise of discretion were in its province, it would not accept the expert as qualified. We need not detail the qualifications of the four practitioners here; it is sufficient to state that the professional facts summarized as to each were sufficient to require consideration of their opinions by the tribunal.[7]

---

treatment, the insistence of the plaintiff and her mother on having the surgery, and the effect of the surgery on the plaintiff's health.

[6] The tribunal is also limited to evaluation of only the "medical aspects" of this action. *Salem Orthopedic Surgeons, Inc.* v. *Quinn*, 377 Mass. 514, 521 (1979) (whether patient and doctor made an express contract beyond competence of tribunal).

[7] It is well established that the professional specialty of a medical practitioner offered as a witness need not be precisely and narrowly related to

In light of the *Little* standard, we turn now to a consideration of the offer of proof as it related to each defendant.

3. *Offer of proof as to Dr. Ballantine.* A plaintiff's offer of proof as to negligence will prevail before a malpractice tribunal, under the *Little* directed-verdict test, (1) if a doctor-patient relationship is shown, (2) if there is evidence that the doctor's performance did not conform to good medical practice, and (3) if damage resulted therefrom. Cf. *Little* v. *Rosenthal, supra* at 577-578. According to this standard, the offer of proof against Dr. Ballantine was sufficient; and as to him, a bond should not have been required of the plaintiff.

The plaintiff's experts stated essentially that the diagnosis was incorrect and the surgery was unwarranted. The neurosurgeon, Dr. Yale Koskoff, found "evidence of poor medical practice" by Dr. Ballantine in that, inter alia, alternative modes of therapy had not been fully explored and standard safeguards for experimental surgery were not adhered to. A psychiatrist, Dr. Robert Sovner, wrote that the diagnosis and treatment disregarded accepted medical principles for the treatment of depression and that the psychiatric treatment given to the patient amounted to "grossly improper medical care." Another psychiatrist, Dr. William Beuscher, opined that the failure to give the patient adequate trials of psychotherapy and chemotherapy before proceeding with irreversible brain surgery was "irresponsible."

As to damages, the evidence of unwarranted surgery was sufficient in itself. But there was also evidence offered from a psychologist, Dr. Wynn Schwartz, stating in substance that, if the patient's testimony were believed, her intellectual capacity and mental efficiency would necessarily have deteriorated because of the surgery.

---

the medical issues of the case. Thus, it has been held that a judge, in his discretion, properly admitted the opinions of a general practitioner in a case which related to specialized medical issues. *Nevanranta* v. *Koski,* 335 Mass. 760 (1956). *Preston* v. *Cianci,* 321 Mass. 297, 298-299 (1947). See *Whipple* v. *Grandchamp,* 261 Mass. 40, 47 (1927).

4. *Offer of proof as to Dr. Cassidy.* Evidence was proffered to show that the patient received thirty electric shock treatments by order of Dr. Cassidy while she was under his care. Dr. Sovner wrote that the number of such treatments was "grossly excessive," and that the "psychiatric treatment" given the patient was "grossly improper medical care." Dr. Beuscher opined that the treatment of the patient by electric shock was based on an untenable diagnosis of manic depressive disease and that the treatment by electric shock before pursuing adequate trials of psychotherapy and chemotherapy was "irresponsible." Damages could be inferred as inherent in the proof of both the number and kind of highly intrusive electric shock treatments. We conclude that this offer of proof as to Dr. Cassidy was sufficient, and as to him a bond should not have been required of the plaintiff.

5. *Offer of proof as to Dr. Adams.* Dr. Adams appears to have seen the patient only once, while she was in the hospital two days before the brain surgery. His total contribution was to insert a diagnosis of "severe endogenous depression," and little more, in the hospital record. All four of the plaintiff's experts wrote that this diagnosis was incorrect or "untenable." From various expressions of these four experts, it may be inferred that this diagnosis was extreme and that it precluded less serious diagnoses that would have ruled out surgical or electric shock treatments. Dr. Sovner opined "that the failure to consider a diagnosis of drug-induced akinesia and [to] initiate procedure[s] to rule out the diagnosis was very poor medical practice." Accordingly, we conclude that the offer of proof was sufficient as to Dr. Adams, and as to him a bond should not have been required of the plaintiff.

6. *Offer of proof as to Dr. Levy.* Dr. Levy apparently saw the patient once and reviewed her history, just one day before she underwent the brain surgery. He stated to her and to her mother that he "would not recommend the surgical procedure at this time," but rather recommended an extended period of hospitalization and psychotherapy. The

patient and her mother rejected his advice, and the mother expressed her frustration and bitterness at the long history of treatments by psychiatrists. They were adamant in insisting upon the surgery. Dr. Levy stated that he could not be sure he was right in advising against the surgery, since the patient might benefit from it "through physiological means or through her strong belief in its potency." He stated that he would not stand in their way, even if he could, since they were certainly making a "truly informed" choice.

The plaintiff argues that, despite all the above facts, Dr. Levy should somehow have prevented the surgical procedure. She also argues that Dr. Levy is responsible jointly with Drs. Ballantine and Adams, since he was part of a consulting team or reviewing board. On the total offer of proof, not enough appears to make either of these theories tenable. Therefore, we conclude that the offer of proof as to Dr. Levy was not sufficient, and as to him it was proper to order that a bond be provided by the patient.

7. *The offer of proof as to the hospital.* The plaintiff argues that the defendant physicians are agents or servants of the hospital and that the institution is therefore vicariously liable. No factual basis for this contention is shown in acceptable form. Even if we accept certain facts argued by the plaintiff as if they were documented in the record (facts such as staff affiliation of the defendant doctors with the hospital), they would be insufficient to show that the hospital had power of control or direction over the professional conduct of the physicians. *Khoury* v. *Edison Elec. Illuminating Co.*, 265 Mass. 236, 238 (1928). Nor is there any presentation of factual matter or expert opinion to support the plaintiff's second theory that the hospital had a duty to review or control the research or treatment activities of physicians within the hospital.

In short, whatever the merits of the theories advanced by the plaintiff against the hospital, her presentation is solely an argument rather than an acceptable offer of proof. Consequently, the bond was properly ordered by the tribunal in the case against the hospital.

8. *Conclusion.*   Consistent with the principles shown above, we have not found it necessary, as to Drs. Ballantine, Cassidy, and Adams, to consider the plaintiff's offer of proof as to bases of recovery other than negligence, viz., lack of consent, on the ground that the plaintiff was a minor; lack of informed consent — if that basis is available in this Commonwealth (see *Superintendent of Belchertown State School* v. *Saikewicz,* 373 Mass. 728, 739 [1977]); assault and battery; and other alleged bases.  As to Dr. Levy and the hospital, we have considered all theories of recovery alleged and found them lacking in the offer of proof.

Consequently, we order: (1) that the judgment of dismissal, entered because of the plaintiff's failure to file bonds, be vacated, in so far as it relates to Drs. Ballantine, Cassidy, and Adams; (2) that the orders entered requiring the plaintiff to file bonds as to Drs. Ballantine, Cassidy, and Adams be vacated; (3) that there be substituted therefor, as to Drs. Ballantine, Cassidy, and Adams, a finding and decision that upon the offer of proof presented by the plaintiff, including written reports and other testimony, the evidence thus offered and presented, if properly substantiated, is sufficient to raise a legitimate question of liability appropriate for judicial inquiry; (4) that judgment of dismissal, in so far as it relates to Dr. Levy and to the hospital, be affirmed; and (5) that the case be remanded to the Superior Court for further proceedings therein.

*So ordered.*