CAROLYN J. DiGIOVANNI vs. EDGAR L. LATIMER.

Middlesex.  May 4, 1983. — September 29, 1983.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Medical Malpractice,* Tribunal.  *Doctor,* Duty to disclose to patient. *Emotional Distress.  Negligence,* Medical malpractice, Emotional distress.  *Actionable Tort.*

A plaintiff whose surgeon allegedly failed to inform her that he had excised a portion of one of her fallopian tubes during surgery in 1965 to remove a cyst made no showing before a medical malpractice tribunal that, due to lack of this information, she had not taken steps that were available to her to improve her chances of conception. [269-270]

In proceedings before a medical malpractice tribunal, a plaintiff whose surgeon allegedly failed to inform her that he had excised a portion of one of her fallopian tubes during surgery in 1965 to remove a cyst did not establish a causal connection between her emotional distress on learning of the excision many years later, and the subsequent aggravation of her epileptic condition.  [270]

A plaintiff's severe emotional distress on learning, many years after surgery for removal of an ovarian cyst, that her surgeon had also excised a portion of one of her fallopian tubes, presented no question of the surgeon's liability appropriate for judicial inquiry, in the absence of any physical harm as the result of the surgeon's failure to inform her of the excision.  [270-272] LIACOS, J., concurring.

It lay within the proper role of a medical malpractice tribunal to determine whether a plaintiff's emotional distress was legally compensable in light of this court's reasoning in *Payton* v. *Abbott Labs,* 386 Mass. 540, 555-557 (1982).  [272-273]

CIVIL ACTION commenced in the Superior Court Department on March 13, 1981.

The case was heard by *Alberti,* J., on a motion to dismiss.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Leonard Glazer (Kathleen M. Curry* with him) for the plaintiff.

*Mary Elizabeth Carmody* for the defendant.

HENNESSEY, C.J.   The plaintiff, Carolyn J. DiGiovanni, brought a complaint in the Superior Court, alleging that the defendant physician excised a portion of the plaintiff's fallopian tube during an operation to remove an ovarian cyst, that he negligently or intentionally failed to inform the plaintiff of this excision, and that she sustained certain injuries as a result of the defendant's failure to inform her of this excision.[1]

A medical malpractice tribunal, after considering the plaintiff's offer of proof, entered a report which determined that the evidence presented, if properly substantiated, was not sufficient to raise a legitimate question of liability appropriate for judicial inquiry.  See G. L. c. 231, § 60B. The plaintiff filed an objection to the tribunal's report and also elected not to post the statutory bond.  The defendant then filed a motion to dismiss, which the judge granted.  A judgment of dismissal was entered on February 17, 1982.  The plaintiff then appealed, and we transferred the case to this court on our own motion.  We perceive no error in the determination of the tribunal that the evidence presented with regard to the negligence claim, even if properly substantiated, is not sufficient to raise a legitimate question of liability appropriate for judicial inquiry.

We summarize the proof as offered by the plaintiff in her affidavit, together with certain medical reports and documents.  In April, 1965, the plaintiff consulted the defendant because she was experiencing persistent lower abdominal pain.  Tests revealed a lump in her lower abdomen which was diagnosed by the defendant as a probable ovarian cyst. On May 6, 1965, the defendant performed an operation to remove the cyst.  On the following day, the defendant informed the plaintiff that she had had a large cyst on her left ovary but that he was able to remove it without affecting

---

[1] We emphasize that the complaint raises only the defendant's failure to inform *after* the surgery.  There are no allegations concerning negligent performance or informed consent or nonconsensual treatment.

the ovary or the fallopian tube. He also told her that the right ovary and the right fallopian tube were normal and that she should not have any problems thereafter.

On March 19, 1978, the plaintiff was admitted to New England Memorial Hospital where Dr. Richard McDowell conducted a total abdominal hysterectomy (removal of uterus) and right salpingo-oophorectomy (removal of ovary and fallopian tube). After the operation, McDowell told the plaintiff that during the operation he had observed that her left fallopian tube was missing and either was congenitally absent or had been previously surgically excised. For the first time in thirteen years, according to the plaintiff, she became aware that her left fallopian tube had been removed by the defendant.

The "Record of Operation" prepared after the 1965 operation by the defendant states the cyst was completely removed and that the left ovary and tube were preserved. Another report prepared subsequent to the 1965 operation by a member of the hospital's department of pathology, after he examined the organs removed from the plaintiff's body during the operation, stated that gross and microscopic examinations showed that among the specimens removed from the plaintiff's body was a portion of the fallopian tube. The report also diagnosed the cyst as "paratubal," that is, near or on the fallopian tube.

The final diagnosis of "paraovarian cyst" contained in both an "Entrance Record and Summary Sheet" and a "Discharge Summary" was later changed by crossing out the word "ovarian" and inserting above it the word "tubal." Both forms which were altered were signed by Dr. Arthur L. Tauro who was the plaintiff's attending physician at the time of the 1965 operation and who was present during the operation.

At the time of the 1965 operation, the plaintiff was a twenty-two year old married woman. Five months earlier, she had given birth to her first child. She and her husband wanted a second child and had actively attempted to conceive a child after the 1965 operation. She stated in her

affidavit: "At all times I was told that there was no physical reason for my inability to conceive and I experienced emotional problems, upset, and mental anguish in my effort to conceive. If I had known that my tube was removed, I would have been able to have had my doctors take other steps to help my conception and failing this I would have been spared the frustration with its attendant mental upset . . . . As a result of [learning in 1978 that my fallopian tube had been removed in 1965], which was extremely stressful to me, I have suffered severe emotional anxiety and depression resulting in an aggravation of my previously controlled epileptic condition. This manifested itself in a number of severe seizures."

The plaintiff also submitted in her affidavit that, in 1978, after learning about the removal of her fallopian tube by the defendant, she contacted Dr. Tauro, her "family doctor" and informed him of this information. According to the plaintiff, "[h]e stated that if he had known he certainly would have told me because he knew how hard [she] was trying to become pregnant and that to his knowledge only the cyst was removed from [her] left ovary and that was what he was told when he had assisted the surgeon [the defendant] during the operation."

The plaintiff submitted a written opinion of Dr. Robert E. Wheatley, a specialist in obstetrics and gynecology and a clinical instructor in obstetrics and gynecology at Harvard Medical School. Dr. Wheatley, who reviewed the plaintiff's hospital records, stated: "Because removal of the fallopian tube inevitably makes conception more difficult, I believe that the patient should have been told that it was removed. If, in fact, the patient was not told that her fallopian tube was removed, I would consider it to be a departure from sound gynecologic practice."

The essential inquiry before a medical malpractice tribunal is whether "the evidence presented if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial inquiry or whether the plaintiff's case is merely an unfortunate medical result."

G. L. c. 231, § 60B, inserted by St. 1975, c. 362, § 5. In recent cases we have established that the task of a tribunal is comparable to a trial judge's function in ruling on a defendant's motion for directed verdict. *Gugino* v. *Harvard Community Health Plan,* 380 Mass. 464, 468 (1980). *Little* v. *Rosenthal,* 376 Mass. 573, 578 (1978). Thus, the plaintiff must present "not mere allegations or an oral offer of proof by counsel, but 'evidence' to be 'properly substantiated' at trial." *Gugino, supra* at 467-468. Any appraisal of the weight and credibility of the evidence, however, is prohibited. *Id.* at 468. We have concluded that, with regard to negligence claims, "[a] plaintiff's offer of proof as to negligence will prevail before a malpractice tribunal, under the . . . directed-verdict test, (1) if a doctor-patient relationship is shown, (2) if there is evidence that the doctor's performance did not conform to good medical practice, and (3) if damage resulted therefrom." *Kapp* v. *Ballantine,* 380 Mass. 186, 193 (1980).

We have never addressed whether the failure to inform a patient of something that happened during an operation or other medical procedure breaches a legal duty. Cf. *Harnish* v. *Children's Hosp. Medical Center,* 387 Mass. 152, 155 (1982) ("[A] physician owes to his patient the duty to disclose in a reasonable manner all significant medical information that the physician possesses or reasonably should possess that is material to an intelligent decision by the patient whether to undergo a proposed procedure"). We need not decide that issue now, however, because we conclude that the plaintiff has not demonstrated that the defendant's alleged negligence caused her injuries which are legally compensable. The essence of the plaintiff's claim is that the defendant's failure to inform the plaintiff that he removed her fallopian tube was negligent because removal of a fallopian tube, in Dr. Wheatley's opinion, "inevitably makes conception more difficult." The plaintiff asserts that the defendant's negligence in this regard caused her (1) to forgo, during the thirteen years when she was unaware of the fallopian tube's removal, pursuing "other steps to help [her]

conception," (2) severe emotional distress and anxiety during the thirteen years because she could not become pregnant even though she had been told that there was no physical reason why she could not conceive, and (3) after she was informed in 1978 that the fallopian tube had been removed, severe emotional distress which resulted in an aggravation of her previously controlled epileptic condition.

We first conclude that the plaintiff has not presented sufficient evidence that she could have taken "other steps" to improve her chances of conception or that the aggravation of her epileptic seizures was caused by her emotional distress that resulted after learning of the removal of her fallopian tube. With regard to the alleged "other steps" that the plaintiff could have taken, the plaintiff presented no evidence that any such procedures or treatments exist. The plaintiff's statement in her affidavit is insufficient to establish what procedures exist that might have increased the likelihood of conception. Furthermore, we do not think that their existence is a matter of common knowledge. Thus, the plaintiff did not demonstrate adequately that the defendant's failure to inform her of the removal of her fallopian tube deprived her of the opportunity to take "other steps" to increase the likelihood of conception.

Similarly, the plaintiff has not established the existence of a causal relationship between her emotional distress and the aggravation of her epileptic condition. She states in her affidavit that the emotional distress she suffered, after learning in 1978 that her fallopian tube had been removed in 1965, aggravated her epileptic condition. Her statement alone, however, does not establish a causal connection since "a difficult *medical* question is presented when it must be determined if emotional distress resulted in physical injury" (emphasis supplied). *State Rubbish Collectors Ass'n* v. *Siliznoff*, 38 Cal. 2d 330, 338 (1952).

Thus, we now examine the plaintiff's offer of proof with regard to her third type of injury: (1) that she suffered severe emotional distress during the thirteen-year period when she was frustrated at her failure to conceive, even

though, in her belief, there was no physical reason for this problem, and (2) that she suffered additional emotional distress after she learned in 1978 of the earlier removal of her left fallopian tube. Assuming that the plaintiff has presented sufficient evidence that the defendant's alleged negligence caused her severe emotional distress, we, nevertheless, conclude that the plaintiff's negligence claim does not present a "legitimate question of liability appropriate for judicial inquiry," G. L. c. 231, § 60B, in light of our reasoning in *Payton* v. *Abbott Labs*, 386 Mass. 540 (1982). In *Payton* v. *Abbott Labs*, we concluded: "[I]n order for [recovery to be allowed] for negligently inflicted emotional distress, [the plaintiff] must allege and prove she suffered physical harm as a result of the conduct which caused the emotional distress. . . . [A] plaintiff's physical harm must either cause or be caused by the emotional distress alleged, and . . . the physical harm must be manifested by objective symptomatology and substantiated by expert medical testimony." *Id.* at 556. In this case, the plaintiff has not established that the defendant's negligent conduct in failing to inform her that he had removed her fallopian tube caused her any physical harm. In particular, she has not demonstrated either that the defendant's failure to inform resulted directly in a physical harm which in turn caused her emotional distress or that his failure to inform caused her emotional distress which in turn caused a physical harm. Thus, under the rule set forth in *Payton, supra,* the plaintiff would not be allowed to recover damages for the emotional distress she suffered as a result of the defendant's negligence.

It might be argued that because the relationship between a physician and a patient is fiduciary in nature, see *Nixdorf* v. *Hicken*, 612 P.2d 348, 354 (Utah 1980), because a patient has a right to determine what shall be done or not be done with his body, see *Harnish* v. *Children's Hosp. Medical Center*, 387 Mass. 152, 154-155 (1982), and because a patient has an obvious interest in being informed of what a physician has done to him in the course of treatment, liability for emotional distress alone should be imposed in the

circumstances of the case at bar. We, however, find these contentions unpersuasive. The policy reasons for denying recovery for negligently inflicted emotional distress in the absence of physical harm are essentially unaffected by the above mentioned considerations. For a discussion of the reasons underpinning this rule, see *Payton, supra* at 552-553. Thus, we conclude that, since the plaintiff presented no evidence that the defendant's negligent failure to inform caused her any physical harm, the plaintiff's claim for emotional distress does not present a question of liability appropriate for judicial inquiry.

It can be argued that the issue whether the injuries incurred by the plaintiff are legally compensable is beyond the proper scope of the tribunal's inquiry. In *McMahon* v. *Glixman,* 379 Mass. 60, 68 (1979), we indicated that "a tribunal should evaluate only the medical aspects of a malpractice claim." Thus, we concluded that the issue whether the plaintiff's action was barred by the statute of limitations was not an appropriate subject for the tribunal to consider. *Id.* at 66-69. We reasoned that the tribunal's focus should be kept narrow to avoid turning "the tribunal procedure into a miniature trial of all issues." *Id.* at 68-69. See *Little* v. *Rosenthal,* 376 Mass. 573, 577 (1978); *Salem Orthopedic Surgeons, Inc.* v. *Quinn,* 377 Mass. 514, 521 (1979). Similarly, in *Flagg* v. *Scott,* 9 Mass. App. Ct. 811, 812 (1980), the Appeals Court held that the question whether the individual defendant was a person for whose conduct the defendant hospital would be responsible was beyond the competence of the tribunal.[2] Nevertheless, in this case the issue of whether the plaintiff has suffered legally compensable injuries presents medical questions, since physical harm and a causal relationship must be demonstrated. Cf. *State Rubbish Collectors Ass'n* v. *Siliznoff, supra* at 338. We con-

---

[2] In *Kapp* v. *Ballantine,* 380 Mass. 186, 195 (1980), and *Gugino* v. *Harvard Community Health Plan,* 380 Mass. 464, 468 (1980), the plaintiffs did not argue that the issue of vicarious liability was beyond the tribunal's purview. Nevertheless, as was held in *Flagg,* that issue is not for the tribunal.

clude that it is not an improper expansion of the tribunal's role to have it determine whether the plaintiff establishes not merely damages resulting from the defendant's negligence but also whether those damages are legally compensable in light of our reasoning set forth in *Payton* v. *Abbott Labs,* 386 Mass. 540, 555-557 (1982).

There is a narrow class of cases wherein recovery for emotional suffering has been permitted without proof of resulting physical injury. See *Agis* v. *Howard Johnson Co.,* 371 Mass. 140, 144-145 (1976). An argument could be advanced that, in an *Agis* type case, sufficient proof of the nexus between the defendant's conduct and the plaintiff's damage (emotional suffering) can be shown without the assistance of expert testimony. See *Vance* v. *Vance,* 286 Md. 490, 503-504 (1979). See also *State Rubbish Collectors Ass'n* v. *Siliznoff,* 38 Cal. 2d 330, 338 (1952). Although the plaintiff's complaint asserts, inter alia, that the defendant "intentionally" withheld from her information about the removal of the fallopian tube, there is no allegation or argument, indeed no slightest suggestion, that the defendant's conduct was of the extreme and outrageous nature required by *Agis.* In the context of the plaintiff's complaint, the assertion of intentional conduct is no more than an aspect of the claim of negligence.

*Judgment of dismissal affirmed.*

LIACOS, J. (concurring). To a large extent, the result reached by the court in this case is dictated by the court's decision in *Payton* v. *Abbott Labs,* 386 Mass. 540, 556 (1982). The court's continued insistence on a showing of causally related physical harm in actions alleging negligently inflicted emotional distress dictates the result in this case. The issue has been settled, for the time being, by *Payton.* It is settled wrongly, I think, for the reasons ably expressed by Justice Wilkins's dissent in *Payton, id.* at 578, a view to which I still adhere. One need only point to the facts al-

leged in this case for further proof that the view that negligently inflicted emotional distress is not compensable is plainly wrong. I must join, albeit reluctantly, in the result the court reaches in this case because I am bound by the court's recent decision.