GREGORY DUMES[1] & others[2] *vs.* DAVID GENEST & others.[3]

No. 89-P-699.

Bristol. October 16, 1990. - March 29, 1991.

Present: ARMSTRONG, KAPLAN, & GILLERMAN, JJ.

*Medical Malpractice*, Tribunal. *Negligence*, Medical malpractice. *Evidence*, Expert opinion.

The offer of proof presented to a medical malpractice tribunal, convened pursuant to G. L. c. 231, § 60B, consisting of the patient's sworn narrative, expert opinion based on it and the medical and hospital records, was sufficient to raise a legitimate question of liability appropriate for judicial inquiry. [381-383]

CIVIL ACTION commenced in the Superior Court Department on June 16, 1988.

The case was heard by *George Jacobs*, J., on a motion to dismiss.

*James A. G. Hamilton* for the plaintiffs.

*Robert P. Powers* (*Joseph P. Musacchio* with him) for the defendants.

ARMSTRONG, J. The plaintiffs appeal from a judgment of dismissal entered for all the defendants after a medical malpractice tribunal, convened pursuant to G. L. c. 231, § 60B, found (paraphrasing the conclusory words of the statute) "[t]hat the evidence is not properly substantiated and not sufficient to raise a legitimate question of liability appropriate for judicial inquiry and the [plaintiffs'] action is merely an unfortunate medical result." The minor plaintiff (Gregory) had been diagnosed as suffering from "Erb's Palsy," a

---

[1]By his mother and father as next friends.

[2]Linda Hurley-Dumes and Bruce Dumes.

[3]Harvard Community Health Plan, Inc., and Brigham and Women's Hospital, Inc.

condition in which an arm (in Gregory's case, the right arm) suffers a degree of paralysis due to severence of nerves connecting it to the spinal cord at the fifth and sixth cervical vertebrae. There seems to be no dispute that the severence occurred in the course of Gregory's difficult forceps delivery (at eleven pounds, two ounces, in the forty-first week) by Dr. David Genest, an obstetrician engaged or employed by the Harvard Community Health Plan, Inc. (HCHP), at the Brigham and Women's Hospital in Boston.

The salient parts of the offer of proof consisted of (1) the HCHP prenatal records, indicating that the mother (Linda), who had serious obesity, had been gaining weight excessively (from 217 pounds in third month to 263 pounds in ninth month) during the pregnancy, had developed pregnancy-induced ("gestational") diabetes, had exhibited larger than expected uterine growth, and had been suggested as a candidate for cesarean delivery with a notation of "high risk or multi problem pregnancy"; (2) Linda's own affidavit, indicating that at the onset of labor HCHP had directed her to proceed immediately to the Brigham and Women's Hospital (hospital) where her medical records and an HCHP obstetrician, not necessarily the obstetrician who had directed her prenatal care, would be waiting for her, that her records were not at the hospital when she arrived at 9:15 A.M., that she alerted the staff to her history including her diabetic condition, that Dr. Genest, whom she met for the first time in the labor room, had asked for her records and was told they had not arrived, that she was fully dilated at 9:40 and was told to push, that Dr. Genest elected not to proceed by cesarean, that her membranes were artificially ruptured at 9:52, that Gregory's head emerged but his shoulders became impacted, that the delivery at 11:01 A.M. was accomplished with a nurse and the anesthesiologist pushing hard on the uterus and Dr. Genest pulling with forceps, and that Gregory was born with facial lesions and the immobile arm; (3) the hospital record, which confirmed that the birth was difficult and that the injuries had been received; (4) an expert opinion from a board certified obstetrician and gynecologist who, on

review of the HCHP prenatal records and the hospital delivery records, determined that "Dr. Genest's management of the labor and delivery in this case was [not] proper and in accordance with accepted standards of obstetrical care" in that the "available information indicates the delivery should have been accomplished by [c]esarean section," that "[t]he vaginal route of delivery was foreseeably difficult and traumátic and exposed this child to the unnecessary risk of shoulder dystocia [impaction] which resulted in the development of right Erb's palsy"; and (5) numerous passages from medical texts concerning the complications of diabetic pregnancies, particularly the significant correlation between diabetes and macrosomic, or excessively large, fetuses, and the likelihood of dystocia with the attendant risk of Erb's palsy. Several of these texts echoed the warning in a technical bulletin of the American College of Obstetricians and Gynecologists relating to managing diabetic pregnancies: "A cesarean section should be performed in any diabetic patient whose estimated fetal size is over 4,000 gm. [roughly nine pounds]"

The offer of proof, in the form of the documentary presentation contemplated by § 60B (see *Kapp* v. *Ballantine*, 380 Mass. 186, 190 n.4 [1980]), sufficed to show the existence of evidence that the medical care Linda received in delivery did not conform to good medical practice and that injury to Gregory resulted therefrom. See *Little* v. *Rosenthal*, 376 Mass. 573, 577-578 (1978); *Kapp* v. *Ballantine*, 380 Mass. at 193. Here, as in *Gugino* v. *Harvard Community Health Plan*, 380 Mass. 464 (1980), where articles from medical publications were also included in the offer of proof (*id.* at 467), the offer passes muster even if the articles are disregarded. That is to say, the patient's sworn narrative and the expert opinion that was based on it as well as on the HCHP and hospital records make out, if believed, a case of substandard care. Compare *Gugino* at 467-468. It is, thus, unnecessary to consider the status at the offer-of-proof stage of medical articles of the type made admissible by § 60B, fifth par., but which lack an evidentiary showing of the author's exper-

tise (as required by G. L. c. 233, § 79C). See *Mazzaro v. Paull*, 372 Mass. 645, 653 (1977); *Girard v. Crawford*, 13 Mass. App. Ct. 916, 917 (1982); *Jasper v. Tomaiolo*, 20 Mass. App. Ct. 201, 204 (1985).

The only fact mentioned in the expert opinion letter that appears not to be included in the HCHP and hospital records — namely, that the estimated weight of the fetus before delivery was nine pounds — is not crucial in light of the several references to the excessive fetal size in the HCHP records, the relationship stated in the expert's letter between diabetes and macrosomic fetuses, the mother's forty-six pound weight gain during pregnancy, the fact that the pregnancy was beyond term, and the uncertainties encountered in determining fetal size in a significantly obese mother.

The principal attack on the sufficiency of the offer of proof, as it applies to Dr. Genest, concerns the possibility that he, unlike the plaintiffs' expert, may have had to act in ignorance of the HCHP prenatal records, which may not have been available before Dr. Genest had to make a decision whether to proceed without cesarean. In this situation, however, where the physician is affiliated with a group, clinic, or organization that has undertaken to provide medical care through interchangeable professionals, it would be particularly unsound to allow failures in record-keeping and record-retrieval to lessen the standard of care to which the patient is entitled. Accurate record-keeping and retrieval is necessarily a part of the duty undertaken in this mode of health care delivery: it enables the substitution of one physician for another with minimal loss of continuity. At least at the offer-of-proof stage, it is irrelevant to place responsibility for the loss of the records (if in fact it occurred and resulted in substandard care). The malpractice tribunal's role is to "evaluate only the medical aspects of a malpractice claim" *McMahon v. Glixman*, 379 Mass. 60, 68 (1979). "[Its] focus should be kept narrow to avoid turning 'the tribunal procedure into a miniature trial of all issues.'" *DiGiovanni v. Latimer*, 390 Mass. 265, 272 (1983), quoting from *McMahon v. Glixman* at 68-69.

Similarly, it was not within the purview of the tribunal to consider the possible vicarious liability of the hospital or HCHP. *DiGiovanni* v. *Latimer, supra* at 272 and n.2. *Flagg* v. *Scott*, 9 Mass. App. Ct. 811, 812 (1980). The plaintiffs did not waive (as those defendants contend) vicarious liability; we need not consider the fact that the plaintiffs also asserted against those defendants various particularized claims of negligent omissions that might form independent bases of liability.

The judgment, the order for a bond, and the present finding and decision of the tribunal are all vacated; that finding and decision are to be replaced by a new finding and decision to the effect that the plaintiffs' offer of proof, if properly substantiated, is sufficient to raise a legitimate question of liability appropriate for judicial inquiry.

*So ordered.*