Smith, J.
1. INTRODUCTION
The plaintiffs, Leon Beal (“Mr. Beal”), as father and next friend of Sateydra Beal, Robin Beal (“Mrs. Beal”), as mother and next friend of Sateydra Beal, and Sateydra Beal (“Sateydra”) brought this action against the defendants Ronald Broadard (“Ronald”), William Broadard (“William”) who is Ronald’s father, Columbus Park Congregation of Jehovah’s Witnesses (“Columbus Park CJW”), Metropolitan Congregation of Jehovah’s Witnesses, Inc., a/k/a Ashmont Congregation of Jehovah’s Witnesses (“Ashmont CJW”) and Watchtower Bible and Tract Society of New York, Inc. (“Watchtower”), alleging that Ronald molested Sateydra on several occasions while conducting Bible study sessions on behalf of the other defendants. Following the defendants’ motion to dismiss, the plaintiffs filed an amended complaint. After conducting discovery, all the defendants except Ronald Broadard moved for summary judgment. For the reasons stated below, the defendants’ motion is ALLOWED in part and DENIED in part.
2. BACKGROUND
The summary judgment record, viewed in the light most favorable to the Beals, reveals the following undisputed facts. Sateydra Beal was bom on November 15, 1988. She alleges that from late 1998 through August 2000, Ronald Broadard, her second cousin, sexually molested her during Bible study sessions in her home. These sessions occurred in the Beal family home in Boston’s Dorchester neighborhood. During this time, Mrs. Beal worshiped as a member of the Ashmont CJW. Mrs. Beal, formally baptized as a Jehovah’s Witness in 1994, raised Sateydra as a Jehovah’s Witness but never had her daughter baptized due to her young age. Mr. Beal consented to Sateydra’s being raised in the faith although he never became a Jehovah’s Witness. He also consented to Sateydra’s participation in Bible study sessions.
*115 During the time Ronald was allegedly molesting Sateydra, he acted as a ministerial servant and pioneer with the Columbus Park CJW. To be appointed a ministerial servant, the Congregation’s body of elders must unanimously recommend an individual. Ronald was appointed a ministerial servant sometime in 1985. William Broadard, Ronald’s father, became an elder of Columbus Park CJW in 1978 and was serving as elder when the body of elders appointed his son, Ronald, as a ministerial servant. As a ministerial servant, Ronald devoted 70 hours per month to preaching and other Congregation-related activities.
Sateydra’s parents first learned of the alleged molestation on either August 8 or August 18, 2000. At that time, Sateydra was eleven years old. On that same day, Mrs. Beal informed Melvin Watkins, an elder in theAshmontCJW, of Sateydra’s allegations. Mrs. Beal then informed Jeannette and William Broadard of the allegations. Mrs. Beal learned of the allegations before any other Jehovah’s Witness.
When he arrived for Bible study sessions, Ronald wore a suit. Eventually he began to bring a change of clothes with him, and at the conclusion of studies would change into the other clothes to play with the children at the Beal house. Ronald was approximately thirty-five years old at the time of the alleged molestation. Sateydra was less than ten years old. Following the period of alleged molestation, Sateydra spent time in various Boston area inpatient mental health facilities. She also sought and received treatment in several residential treatment programs in Boston.
3. DISCUSSION
This court shall grant summary judgment when the material facts are undisputed and the movant is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Comm. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party shoulders the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). While this court is reluctant to grant summary judgment in a negligence matter, it may do so where no rational view of the evidence permits a finding of negligence. Mullens v. Pine Manor College, 389 Mass. 47, 56 (1983).
The two congregations assert that their organizational structure precludes the lawsuit. The record, however, fails to require that conclusion. The defendants’ memorandum cites to various pleadings and to three affidavits from church elders. Because unverified pleadings do not constitute evidence on a motion for summary judgment, this court does not consider them as evidence now. The three affidavits from John Ryan, Lennox Davis and James Robinson also fail to demonstrate the absence of a triable issue as to the Congregations’ corporate structure. The affidavits are not properly notarized or acknowledged, and the affiants fail to acknowledge that their statements are made under the penalties of perjury. Therefore, the affidavits are not properly before this Court on this motion and this Court will not consider them even though the Beals do not address this issue in their filings. On this record, the court cannot conclude that no triable issue exists as to the corporate structure of the Boston area Jehovah’s Witness congregations, particularly in light of the congregations’ reluctance to participate in discovery. Furthermore, the evidence indicates that although Ronald and William were agents of the Columbus Park Congregation, members of the Ashmont group may have played a role in the disciplining of Ronald after Sateydra’s allegations. The evidence suggests a degree of interrelatedness amongst the congregations that may be material to the case and is very much in dispute.
The defendants’ motion addresses seven counts of the Beals’ complaint, sounding in negligence, breach of fiduciary duiy, deceit, sexual assault and battery, intentional infliction of emotional distress, negligent infliction of emotional distress and conspiracy. The Court considers each in turn.
A. Negligence
A plaintiff seeking to hold a defendant liable in negligence must establish that the defendant owed the plaintiff a particular duty of care, that he breached it and that the breach harmed the plaintiff. Corsetti v. The Stone Co., 396 Mass. 1, 23 (1985). Whether a duly exists is a question of law. Davis v. Westwood Group, 420 Mass. 739, 742-43 (1995). Normally, there is no duty to protect one from the criminal conduct of another. Luoni v. Berube, 431 Mass. 729, 731 (2000). However, a duty may arise where a special relationship exists between the parties. Id. at 731-32. Where, as here, no statute establishes the duty claimed, a special relationship “is predicated upon a plaintiffs reasonable expectations and reliance that a defendant will anticipate harmful acts of third persons and take appropriate measures to protect the plaintiff from harm.” Id. at 732.
“A duty finds its source in existing social values and customs.” Mullins v. Pine Manor College, 389 Mass. 47, 51 (1983). In this case, the Beals contend that the defendants owed Sateydra a duty arising from the parties’ clergy-congregant relationship. Although Leon Beal never joined the Jehovah’s Witnesses, both Sateydra and Robin Beal practiced in the Congregation. The question then presents itself whether a *116 community consensus existed, at the time of the alleged assaults, sufficient to impose a duty of care on the defendants. Mullins, 389 Mass, at 51. The record contains no evidence on this point. Under Mullins, a consensus emerges from the nature of the situation. Mullins concerned a college’s duty to protect its students from third-party criminal acts. The plaintiff offered expert testimony relating to industry practices and the Supreme Judicial Court found a duty owed because the college alone had the ability to adequately protect its students. 389 Mass, at 51-52. This case differs from Mullins because the plaintiffs themselves arguably were best situated to protect their child since the abuse allegedly took place only in the plaintiffs’ home over which they had complete control. Therefore, no duty exists based solely on the parties’ church-congregant relationship.
However, the law recognizes another basis for imposing a duty on the defendants here. Massachusetts courts long ago settled the question that a duty voluntarily assumed must be performed with due care. Id. at 52. Restatement (Second) of Torts §323 (1965), states: “One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other’s person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other’s reliance upon the undertaking.” The evidence in this case warrants the conclusion that the defendants voluntarily undertook to provide the Beals with private religious instruction in their home by a person who they appointed to provide such ministerial services. The Beals must also show that the defendants’ negligence increased the risk of harm or that the harm was suffered because of the Beals’ reliance on that undertaking. Mullins, 389 Mass, at 53-54. The question arises whether Sateydra’s personal safety constituted an indispensable part of the Bible study sessions.[4] To the extent that private Bible study sessions constitute an integral part of the faith, those who conduct the sessions and organize them guarantee their wards’ safety. A jury may reasonably conclude that the Beals relied on the willingness of churches like the Jehovah’s Witnesses to exercise due care to protect them from foreseeable harm.
While this court is not prepared to make the sweeping pronouncement the Beals seek concerning the special relationship between a church and its flock, the court is neither ready to follow the defendants’ position that a church never owes a duty to its congregants. Rather, ordinary negligence principles dictate that where a church or its agent assumes the care and control of an individual for Bible study or other ministerial or religious purposes, and that individual relies on the instructor’s status of good standing within her church, the church must reasonably guard against the agent’s foreseeable criminal acts. The Beals correctly cite Copithorne v. Framingham Union Hosp., 401 Mass. 860, 862 (1988), for the proposition that a jury could reasonably find that the responsible Jehovah’s Witness Congregation(s) owed a duty to the Beals, as their congregants, who in deciding to permit Ronald into their home reasonably relied on his status as an appointed ministerial servant as well as on his good standing and reputation within the congregation, and that the congregation violated this duty by failing to take sufficient action in responding to Ronald’s alleged previous instances of sexual misconduct. In Copithorne, a hospital employee entered into a doctor-patient relationship with a doctor who worked at the same hospital. She relied on the doctor’s good standing and good reputation for medical proficiency within the hospital community. Then, during a house call, the doctor drugged and raped the plaintiff. Evidence indicated that‘the hospital may have known of at least two prior incidents of sexual misconduct by the doctor. 401 Mass, at 861-62. The facts of that case resemble those here, except that this case concerns a church and not a hospital. Accepting the facts in the light most favorable to the Beals, as this court must at summary judgment, and applying the rule in Copithorne, summary judgment cannot enter in favor of the defendants on the question of whether a duty exists.
If a duty exists, it extends only to protect the Beals from Ronald Broadard’s reasonably foreseeable criminal acts. Poskus v. Lombardo’s of Randolph, Inc., 423 Mass. 687, 639-40 (1996). However, if the risk of a criminal assault is foreseeable, the plaintiffs need not show the exact nature or source of that assault in order for liability to attach. Foley v. Boston Housing Auth., 407 Mass. 640, 645 (1990). The Beals successfully allege that William Broadard had knowledge of Ronald’s prior incidents of sexual dangerousness. William acted as an elder in the congregation that appointed Ronald as a ministerial servant. Specifically, the Beals allege that several members of the Broadard’s extended family knew of suspected incidents. Keesha and Denice Rue allege that William Broadard and his wife knew of specific sexual incidents between Ronald and a neighborhood woman that transpired during the 1980s. These facts, if proved at trial, would justify a jury’s finding that the risk of injury to Sateydra was within the realm of foreseeable consequences of the Congregations’ negligence in continuing Ronald’s status as a ministerial servant. If William Broadard or the other elders had actual notice of allegations that Ronald had behaved in a sexually inappropriate manner towards young people and took no measures to prevent further such behavior, then it was entirely foreseeable that Ronald would act in a consistent, or worse manner. The summary judgment record clearly presents a substantial question of fact on this point, with regards to William Broadard and the Columbus Park CJW in which he was an elder.
*117 The Beals fail to demonstrate that the defendant Watchtower could have foreseen Ronald Broadard’s alleged assaults. The record contains not a scintilla of evidence that anyone ever informed Watchtower of Ronald’s purported sexual dangerousness prior to the alleged instances of abuse. The record fails to suggest in any rational way that the Watchtower knew of Ronald’s alleged propensities, and therefore summary judgment will enter in favor of Watchtower on this count of the Beals’ complaint.
The question of causation is generally one of fact for the jury. Mullins, 389 Mass, at 58. A plaintiff need only show “that there was greater likelihood or probability that the harm complained of was due to causes for which the defendant was responsible than from any other cause.” Id., quoting McLaughlin v. Berstein, 356 Mass. 219, 226 (1969). The Beals need not eliminate every possibility that the defendants’ conduct was not the cause. Carey v. General Motors Corp., 377 Mass. 736, 740 (1979). Reasonable men must be able to conclude, based on the evidence, that the defendant more probably than not caused the harm. Id.
The defendants contend that Robin Beal’s failure to protect her child from Ronald Broadard functioned as a superseding cause and broke the chain of causation tying the defendants to Sateydra’s injury. “If a series of events occur between the negligent conduct and the ultimate harm, the court must determine whether those intervening events have broken the chain of factual causation or, if not, have otherwise extinguished the element of proximate cause and become a superseding cause of the harm.” Kent v. Commonwealth, 487 Mass. 312, 321 (2002). The defendants do not explain what series of events supposedly shifted the duty of care from the Congregation(s) and William Broadard onto Robin Beal. They just rely on an alleged non-occurrence instead, that the Beals failed to protect their daughter. The defendants claim that because the alleged abuse occurred at the Beals’ home, Sateydra was actually under her mother’s care and control when she was molested. However, the evidence fails to support this conclusion. The deposition the defendants cite to actually states that as far as she (Robin Beal) knows, the abuse occurred in her home. Mrs. Beal expressly states that she is speculating in that testimony, and neither assumption nor conjecture adequately establish the solid foundation of undisputed fact required for summary judgment. Indeed, the defendants’ interpretation of the facts is plausible, but it is certainly not the one most favorable to the non-moving parties. The defendants (other than Watchtower) are not entitled to summary judgment on the question of causation.
B. Breach of Fiduciary Duly
The parties agree that Massachusetts decisions provide little guidance in determining whether a church owes a fiduciary duty to its congregants. They also agree, as does this court, that a fiduciary duly arises “when one reposes faith, confidence and trust in another’s judgment and advice.” Van Brode Group, Inc. v. Bowditch & Dewey, 36 Mass.App.Ct. 509, 516 (1994). The duty arises only if the defendant knew the plaintiff intended to rely on the services provided. Id. While the defendants accurately note that no Massachusetts court has ever found a fiduciary duty running from a church to its congregants, they offer no rule precluding this court from allowing a trial on the question of whether one may be found in these circumstances.
The Beals cite Donahue v. Rodd Electrotype Co. of New England, Inc., 367 Mass. 578 (1975), in support of their position. Donahue discusses fine points of corporate structure in close corporations, and concerns the duty of utmost good faith, a duty even more stringent than a fiduciary duty. A duty of utmost good faith arises in close corporations because they resemble partnerships. Neither the facts nor the law of Donahue readily analogize to this case, where the relationship appears to hinge on the Broadards’ position of authority and Sateydra Beal’s position in relation to that authority.
This court believes that a jury could find that the defendants owed a fiduciary duty to the plaintiffs in this case, based on the Broadards’ position of trust in the Beals’ home and church, especially the position of power they wielded over young Sateydra Beal. To shed light on their theory, the Beals cite several cases from other jurisdictions. While these cases do not bind this court, they may act as informative examples for comparative purposes. For example, in Koenig v. Lambert, 527 N.W.2d 903, 906 (S.D. 1993), the Supreme Court of South Dakota found a relationship of trust and faith between a priest and parishioner that was equivalent to a doctor-patient or attomey-client-relationship. The plaintiff, a former altar boy, was raised to trust and obey the diocese, and the diocese encouraged that trust and obedience. In this case, on the evidence forming the summary judgment record, a jury could conclude that the Beals likewise placed their trust in their ministers, and raised Sateydra to obey and respect the Jehovah’s Witnesses’ faith and its ministers. William Broadard’s relationship with the Beals went far beyond an ordinary clergy-parishioner relationship because Broadard was related to the Beals, knew them personally and had reason to know that the Beals would place trust in him. This special relationship between the Broadards and the Beals bears noting because it distinguishes the Beals’ claim of breach of fiduciary duty based on the violation of a duty of loyally and honesty, from one of ordinary “clergy malpractice” based on violation of professional standards. See Schieffer v. Catholic Archdiocese of Omaha, 244 Neb. 715, 720-21 (1993) (comparing claims of breach of fiduciary duty to claims of clergy malpractice). The Second Circuit and Connecticut’s Federal District Court also implicitly recognize the possibility *118 that a fiduciary relationship may exist between church and parishioner, particularly where the victim is a minor child. Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 196 F.3d 409, 429-30 (2nd Cir. 1999). The Supreme Court of Colorado has also held that the position of trust occupied by a minister, coupled with the positive act of counseling a plaintiff, creates a fiduciary duty running from minister to congregant. Moses v. The Diocese of Colorado, 863 P.2d 310, 321 (Colo. 1993) (en banc).
Courts struggle with the constitutional implications inherent in defining the duty owed by clergy to their flock. This difficulty arises because defining professional standards for clergy theoretically involves measuring religious standards against some objective standard. The First Amendment precludes such litigation of religious beliefs. See Murphy, discussed infra. However, in this case, the alleged breach is wholly separate from the substance of any religious beliefs, and a trial on the merits should not require the litigation of specific beliefs or tenets of the Jehovah’s Witness faith. According to Robin Beal, Ronald and William Broadard occupied a somewhat unique position of trust in her household, in no small part flowing from his position in the church. These factual indicia, when added to the existence of a clergy-congregant relationship, support the plaintiffs’ allegations that a fiduciary relationship arose. See Moses, 863 P.2d at 321. No Massachusetts case requires this court to rule, ab initio, that the degree of trust, confidence and faith placed in a minister’s hands under facts like these, fails to equal, as a matter of law, that placed in the hands of an attorney or physician. The court denies the defendants’ motion for summary judgment on this count of the Beals’ amended complaint. However, summary judgment shall enter in favor of Watchtower because no evidence offered by the plaintiffs ties the New York organization to any actions by or on behalf of Ronald Broadard or William Broadard, or the respective Congregations.
C. Deceit
For the Beals to recover on their claim of deceit, they must prove that “the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage.” Danca v. Taunton Savings Bank, 385 Mass. 1, 8 (1982), quoting Barrett Assocs. v. Aronson, 346 Mass. 150, 152 (1963). The thing stated must be susceptible of actual knowledge and not a matter of opinion or judgment. Snyder v. Sperry & Hutchinson Co., 368 Mass. 433, 444 (1975). “The distinction between a statement of fact and a statement of opinion is often a difficult one to draw.” McEneaney v. Chestnut Hill Realty Corp., 38 Mass.App.Ct. 573, 575 (1995). The defendants need not intend to mislead the plaintiff for a cause of action to lie. Id. Moreover, “[pjroof of negligence does not establish wilfulness to fulfill the intent element of fraud.” Macoviak v. Chase Home Mortgage Corp., 40 Mass.App.Ct. 755, 760 (1996). The misrepresentation may be express or implied. Briggs v. Carol Cars, Inc., 407 Mass. 391, 396 (1990).
As the basis for this count of their complaint, the Beals argue that the defendants intentionally concealed their knowledge of Ronald Broadard’s tendencies towards sexual abuse of minors, and thereby warranted his fitness to the Beals. Indeed, the plaintiffs allege that the defendants’ conduct amounted to an implied representation of fitness, supported by affidavits from several individuals claiming knowledge of Ronald Broadard’s alleged sexual misconduct and his parents’ purported knowledge thereof. The question here is close, but the Beals’ claim is strong enough to survive summary judgment as to all defendants except Watchtower. Again, the Beals offer no evidence that Watchtower knew of Ronald Broadard’s deviant tendencies. Summary judgment will enter on behalf of the defendant Watchtower. Arguably, any representations made by the other defendants as to Ronald’s fitness were representations of judgment. The record does not require that conclusion. Even representations of opinion or judgment in some instances constitute statements of fact if the recipient reasonably understands that the maker knows of facts justifying that judgment. McEneaney, 38 Mass.App.Ct. at 575. The defendants’ alleged representations of fitness can, on this record, be construed as representations of fact, not opinion, and the facts appearing in the summary judgment record are sufficient to challenge their truthfulness. The parties do not agree on the factual circumstances of the Beals’ acceptance of Ronald Broadard into their home. Viewed in the light most favorable to the Beals, the allegations in the complaint are sufficient to survive the defendants’ motion. Again, as to the defendant Watchtower, the Beals are unable to show any conduct made by Watchtower towards them specifically that would amount to a representation of anything. Summary judgment shall therefore enter in favor of Watchtower on this claim as well.
D. Sexual Assault & Battery
The Beals also lodge a count of sexual assault and battery against all the defendants. The Beals allege that only Ronald actually perpetrated the assaults, and attempt to impute that liability to the other defendants based solely on traditional vicarious liability. If Ronald Broadard committed sexual assault and battery while within the scope of his employment, then their employer may share liability. Miller v. Federated Dep’t Stores, Inc., 364 Mass. 340, 349-50 (1973). An agent’s conduct falls within the scope of employment if it is of the kind he is employed to perform, if it occurs within the authorized time and space limits, and if it is motivated, at least in part, by a purpose to serve the employer. Wang Laboratories, Inc. v. Business Incentives, Inc., 398 Mass. 854, 859 (1986). The Beals’ *119 claims, even under the generous reading appropriate at summary judgment, fail to meet this standard. Setting aside the question of whether Ronald Broadard was an employee of either William Broadard or any of the Congregations named, the record arguably supports only one element, that the abuse may have occurred during time and space presumably reserved for Bible study. Nonetheless, sexual assault clearly falls outside the purview of any conceivable employment relationship, and no rational jury could conclude that the sexual assaults were committed in furtherance of the Jehovah’s Witness Congregations. Summary judgment shall enter in favor of William Broadard, the Ashmont CJW, the Columbus Park CJW and Watchtower on this count of the amended complaint.
E. Intentional Infliction of Emotional Distress
Intentional infliction of emotional distress claims fall into the same category as those alleging reckless infliction of emotional distress Nancy P. v. D’Amato, 401 Mass. 516, 520 (1988). If the defendants intended to inflict emotional distress or knew or should have known that emotional distress was a likely consequence of that conduct, if their conduct was extreme and outrageous, and if severe emotional distress resulted, liability attaches. Id. While the evidence clearly establishes that the moving defendants never intended or directed any extreme or outrageous conduct towards Sateydra, and indeed, they certainly hoped that neither of her parents would ever learn of any such conduct, it is a question of fact for the jury whether the defendants acted recklessly and indifferently to the likely effect of their conduct on family members who were apt in time to learn of the outrageous conduct. Id. at 520-21.
Massachusetts courts define extreme and outrageous activity as that which is “so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.” Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987). A rational jury could conclude that the Beals’ allegations, if proven, constitute extreme and outrageous activity, and that said conduct resulted in Sateydra Beals’ severe emotional distress.
As the basis of this claim, the Beals allege that the church defendants should have known that their conduct in permitting Ronald to conduct Bible study sessions would result in the plaintiffs’ damages. The defendants argue that the trial of this claim would involve the court in review of ecclesiastical procedure. This court disagrees with the defendants’ position.
The First Amendment to the United States Constitution states that, “Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.” Every court of the Commonwealth owes a duty to ensure that individuals and organizations are not unjustly deprived of their right to freely exercise their religious beliefs Id., citing Can-twellv. Connecticut, 310 U.S. 296 (1940) (breach of the peace conviction of Jehovah’s Witness overturned as violative of First Amendment free exercise clause). Freedom of religion, although a preferred and cherished right, is not absolute. Commonwealth v. Nissenbaum, 404 Mass. 575, 581 (1989).
The church defendants cite Murphy v. ISKCON of New England, Inc., 409 Mass. 842, 849 (1991), to support their argument that permitting a trial on this claim would result in a heresy trial and punish the Jehovah’s Witnesses by imposing tort liability on their unorthodox religious beliefs. While that case stands for the proposition that the courts of the Commonwealth may not put the defendants’ beliefs on trial, that case also explains that a court may inquire into the conduct of a religious organization so long as the plaintiffs claim would not require testimony regarding religious beliefs. Id. at 856-59. Murphy differs from this case in several important respects, and as such, this court concludes that the defendants are not entitled to summary judgment on free exercise grounds. In Murphy the trial judge allowed the plaintiff to introduce the content of Hare Krishna religious scriptures and testify as to what she had learned at temple regarding the material. The Supreme Judicial Court held that permitting this testimony essentially required the Hare Krishnas to prove to a jury that the substance of their beliefs is worthy of respect. 409 Mass, at 854. In that case, the exposure to the offending religious beliefs formed the basis of the tortious activity. Id. at 855. Here, the plaintiffs find fault with the defendants’ conduct, not their belief. The First Amendment provides no shelter from these allegations. This Court denies the defendants’ motion for summary judgment as to this count of the Beals’ complaint, except as to Watchtower, who appear to have directed no conduct of any kind towards the Beals. Summary judgment shall enter in favor of Watchtower.
F. Negligent Infliction of Emotional Distress
The Beals also seek to recover on a theory of negligent infliction of emotional distress. To prevail, they must show negligence, emotional distress, causation, physical harm, and also that a reasonable person under similar circumstances would have suffered emotional distress. Sullivan v. Boston Gas Co., 414 Mass. 129, 132 (1993). In light of this court’s denial of the defendants’ summary judgment motion on the question of negligence, the defendants must show that they are entitled to summary judgment on one of the other elements of this claim for their motion to succeed.
Certainly, Sateydra Beal’s injuries, if proven, would justify a jury’s finding that she suffered physical harm and emotional distress as a result of the defendants’ negligence in allowing Ronald Broadard to perform home Bible study classes when they knew he had a *120 histoiy of sexual assault. As to Leon and Robin Beal, they must also prove some physical harm to recover for the negligent infliction of emotional distress. Payton v. Abbott Labs, 386 Mass. 540, 555 (1982). Likewise, a parent claiming emotional distress caused by negligently inflicted injuries to her child must witness the injury or come upon the injured child promptly after the injury. Nancy P., 401 Mass, at 520. Like the mother in that case who learned of the harm inflicted on her daughter many months after the abuse, Leon and Robin Beal learned of the alleged harm to Sateydra some considerable time after it occurred. Therefore, they may not recover under this theory. Inasmuch as the defendants seek summary judgment on this count, this Court rules that the parents may not recover for negligent infliction of emotional distress, but Sateydra Beal’s claim on this count survives.
The defendants’ reliance on DiGiovanni v. Latimer, 390 Mass. 265, 271 (1983), is misplaced. In that case, a physician failed to inform his patient that he had removed her fallopian tube. She claimed emotional distress resulting from her inability to become pregnant during the next thirteen years, until she learned of the tube’s removal. 390 Mass, at 270. That emotional distress purportedly exacerbated the patient’s epilepsy. Id. The plaintiff patient sought to recover for this emotional distress, but could not show that the emotional distress flowing from the doctor’s failure to inform resulted in her physical harm. 390 Mass, at 271. Although the plaintiff alleged that her epilepsy was aggravated by the emotional distress she suffered when she learned of the tube’s removal, the Supreme Judicial Court held that her failure to present medical evidence establishing causation precluded her claim. Id. The court reasoned that her statement could not prove causation because “a difficult medical question is presented when it must be determined if emotional distress resulted in physical injury.” Id. (emphasis in original), quoting State Rubbish Collectors Ass’n v. Siliznoff, 38 Cal.2d 330, 338 (1952). Here, Sateydra Beal does not allege that emotional distress caused her physical injury, rather she alleges that her physical injuiy caused the emotional distress. She alleges that the failure to prevent Ronald from conducting home Bible studies caused concrete physical harm (in the form of repeated sexual assault), resulting in emotional distress. The defendants’ motion is therefore denied as to this count of the plaintiffs’ complaint. Again, based on the lack of any evidence tending to show that Watchtower was situated to prevent the Broadards’ conduct, their motion for summary judgment is allowed.
G. Civil Conspiracy
Presumably, the Beals’ claims of civil conspiracy lie in the notion that the Broadards and the various congregations engaged in some sort of concerted activity, and thus liability for the torts of one should extend to the others. See Kurker v. Hill 44 Mass.App.Ct. 184, 188 (1998). The evidence does not support this theory. The Restatement (Second) of Torts, §876(b) (1977), states that a person may share tort liability if he knows that the conduct of another person constitutes a breach of duly, and he substantially assists or encourages the other’s conduct. “Key to this cause of action is a defendant’s substantial assistance, with the knowledge that such assistance is contributing to a common tortious plan.” Kurker, 44 Mass.App.Ct. at 189.
Even viewing the evidence in the light most favorable to the Beals, no rational person could infer that anyone substantially assisted Ronald Broadard towards a common plan to sexually assault Sateydra Beal. While certain triable issues exist as to the defendants’ negligence, neither the record nor the law permits the view that either the Ashmont CJW or the Columbus Park CJW conspired with William Broadard to commit the tort of negligence. Therefore, summary judgment will enter in favor of all defendants on this count of the amended complaint.
4. ORDER
For the foregoing reasons, it is hereby ORDERED
1. that the defendants’, William Broadard, Columbus Park Congregation of Jehovah’s Witnesses and Metropolitan Congregation of Jehovah’s Witnesses, Inc., a/k/a Ashmont Congregation of Jehovah’s Witnesses, Motion For Summary Judgment is DENIED as to Counts I, II, III, VI and VII of the amended complaint, and ALLOWED as to Counts V and IX of the amended complaint.
2. Defendant Watchtower Bible and Tract Society of New York, Inc.’s Motion For Summary Judgment is ALLOWED as to every count of the amended complaint.
3. The plaintiffs’ Mass.R.Civ.P. 56(f) motion that the Court refrain from deciding the defendants’ motions for summary judgment until after further discovery is DENIED.

The court is not assuming or finding as a fact that the church mandates private study sessions. Rather, the court is accepting, as it must, the facts in the light most favorable to the Beals.