683 So.2d 664 (1996)
Karen ROBBINS and Eldon Max Robbins, Appellants,
v.
ORLANDO, H.M.A., INC., etc., et al., Appellees.
No. 95-154.
District Court of Appeal of Florida, Fifth District.
December 6, 1996.
Francis R. Lakel, Tampa, for Appellants.
Alan J. Landerman of Parker, Goodwin, McGuire, Burke, Landerman & Dabold, P.A., Orlando, for Appellee, Orlando H.M.A., Inc., d/b/a University Behavioral Center.
Lawrence E. Brownstein of Law Offices of Lawrence E. Brownstein, and F. Laurens Brock and Craig A. Brand of Rumberger Kirk & Caldwell, Miami, for Appellee, Riaz Mazcuri, M.D.
THOMPSON, Judge.
Karen Robbins ("Robbins") and her husband, Eldon Robbins, appeal the trial court's dismissal with prejudice of their seven count complaint against Orlando H.M.A., Inc. d/b/a University Behavioral Center ("UBC"), Riaz Mazcuri, M.D., and Steve Hamparian, for failure to comply with the presuit screening requirements of Chapter 766, Florida Statutes (1993). Robbins contends that the alleged acts of the defendants did not arise out of a medical malpractice claim but from independent intentional torts, and that she was therefore not required to comply with Chapter 766. We reverse because the complaint alleges intentional torts rather than medical malpractice.
Whether a plaintiff must give the requisite presuit notice outlined in Chapter 766 is fact-dependent. Foshee v. Health Management Associates, Inc., 675 So.2d 957 (Fla. 5th DCA 1996). The allegations of the complaint, which must be taken as true, determine the facts. Id. "It is up to the court to decide from the allegations in the complaint whether the claim arises `out of the rendering of, or the failure to render, medical care or services.'" Id. (quoting § 766.106, Fla. Stat. (1989)).
Robbins filed a seven count complaint against the appellees, alleging breach of contract, fraud, false imprisonment, intentional infliction of emotional distress, defamation, conspiracy to defraud, and loss of consortium. The complaint alleges that Robbins, a *665 resident of Michigan, was overweight when she saw a television commercial for an upscale weight loss clinic called New Image. The advertisement never mentioned that New Image was a psychiatric facility. UBC and Dr. Mazcuri developed, broadcasted, and authorized the use of the New Image advertisement. Robbins telephoned for information about the program and Hamparian, a marketing agent for UBC, returned her call. When she told him her medical insurance would not pay for a weight loss program or cosmetic surgery, he obtained all of her medical insurance information and secured payment for her stay at the clinic. Robbins later learned that in order to obtain the payments from the insurance company, Dr. Mazcuri and UBC misinformed the insurance company that Robbins suffered from "major depression, severe eating disorder, bulimia and dependent personality traits." Robbins was never asked to submit to a physical examination or to release her medical records to Dr. Mazcuri or UBC before they informed the insurance company of their diagnosis.
UBC provided Robbins with a round-trip ticket to Orlando, where a limousine provided by UBC picked her up. When she arrived at the facility, she did not see any signs for New Image but she did see a sign for "University Behavioral Center." The facility was a concrete block and brick building with a barbed wire fence. She entered the facility and was asked to sign papers, which she did, thinking they were insurance forms. Before clinic personnel examined her or took her medical history, she was given three shots and pills which caused nausea and vomiting. She was taken to dinner and then to the "unit" for the evening. When she stated that she was in the wrong place and that she wanted to leave, she was told by a nurse that everything would be explained to her the following day. The nurse then took her medical and family history. Robbins saw Dr. Mazcuri for the first time on the following day, the second day of her stay at UBC. He did not examine her or take any additional information. Robbins told the doctor she wanted to leave and that they were defrauding her insurance company. When she told him she wanted to leave, he told her "to go back to her room."
Robbins told a nurse she wanted to leave and the nurse brought a form for her to complete, a request to release, which would allow her to leave. Robbins executed the request to release form and told the nurse she wanted to leave immediately. Instead, she was taken back to her room, isolated, and told that as long as the form was signed she would not be able to leave her room. She withdrew the form and was permitted to leave her room and eat with the other residents. Every day of her stay at UBC, Robbins talked with Hamparian on the phone and asked to be released. Finally, on the eighth day, he told a physician to release her and she was released.
The appellees filed motions to dismiss arguing that Robbins' complaint arose out of a malpractice action. The trial court offered Robbins an opportunity to comply with Chapter 766, since the statute of limitations had not expired, but Robbins refused, contending that the case was not a medical malpractice case. The trial court granted Dr. Mazcuri's and UBC's motions to dismiss, ruling that the complaint arose out of alleged medical malpractice and compliance with the presuit requirements of Chapter 766 was mandatory.
We hold that the acts alleged in the complaint do not arise out of the rendering of or the failure to render medical care services. Foshee; Liles v. P.I.A. Medfield, Inc., 681 So.2d 711 (Fla. 2d DCA 1995); Garcia v. Psychiatric Institutes of America, Inc., 638 So.2d 567 (Fla. 5th DCA 1994); Stackhouse v. Emerson, 611 So.2d 1365 (Fla. 5th DCA 1993); Everett v. Florida Institute of Technology, 503 So.2d 1382 (Fla. 5th DCA), appeal dismissed, 511 So.2d 998 (Fla.1987). Accordingly, Robbins was not required to comply with the provisions of Chapter 766. Foshee.
The order dismissing the complaint is reversed.
REVERSED.
PETERSON, C.J., and W. SHARP, J., concur.