# CINDY SEGAL *vs.* FIRST PSYCHIATRIC PLANNERS, INC.[1]

No. 06-P-699.

Norfolk. January 4, 2007. - April 23, 2007.

Present: RAPOZA, C.J., DREBEN, & MEADE, JJ.

*Medical Malpractice,* Tribunal. *Mental Health.*

Claims brought against a hospital, seeking damages for false imprisonment and for intentional and negligent infliction of emotional distress, were nonmedical claims that did not require the plaintiff to post a bond pursuant to G. L. c. 231, § 60B. [713-715] MEADE, J., dissenting.

CIVIL ACTION commenced in the Superior Court Department on September 28, 2004.

A motion to dismiss was heard by *Elizabeth Bowen Donovan,* J.

*Laurie M. Ruskin* for the plaintiff.

*Alan Garber* for the defendant.

DREBEN, J. The issue in this case is whether the plaintiff alleges only medical malpractice claims appropriate for screening by a tribunal or whether she also asserts nonmedical claims which do not require her to post a bond pursuant to G. L. c. 231, § 60B. In her complaint against a physician as well as the operator of Bournewood Hospital (hospital), the plaintiff asserted numerous instances of medical malpractice and also asserted claims of false imprisonment and intentional and negligent infliction of emotional distress by the hospital.[2] After a medical tribunal determined that the evidence presented by the plaintiff was insufficient to raise a legitimate question of li-

---

[1]Doing business as Bournewood Hospital.

[2]The plaintiff does not appeal from the dismissal of her claims against the physician or from the tribunal's determination that her offer of proof was insufficient as to her medical claims. Her appeal is only from the dismissal of those claims against the hospital that she asserts are nonmedical.

ability appropriate for judicial inquiry as to both defendants, and that she may pursue her claims only upon filing a bond, she filed an emergency motion in the Superior Court for clarification or reconsideration. In her motion, she argued that her claim for false imprisonment against the hospital was based exclusively on nonmedical grounds and that her claims of intentional and negligent infliction of emotional distress against the hospital were, in large part, based on nonmedical grounds. The judge ruled that the bond requirement applies to all her claims, stating, "Based on the specific fact allegations in the complaint, the court concludes that all of the plaintiff's claims are based on 'malpractice, error or mistake' by a health care provider in the course of providing medical treatment." After the plaintiff failed to post a bond, a judgment entered dismissing her complaint against the hospital. This is an appeal by the plaintiff. We vacate the judgment in part, as some of the plaintiff's claims are not medical, and hence, she was not required to file a bond for judicial consideration of those claims.

"General Laws c. 231, § 60B, inserted by St. 1975, c. 362, § 5, empowers a screening tribunal to appraise '[e]very action for malpractice, error or mistake against a provider of health care.' " *Little* v. *Rosenthal*, 376 Mass. 573, 576 (1978). The court interpreted this language to mean that "all treatment-related claims were meant to be referred to a malpractice tribunal." *Ibid.* Here, not only was the complaint sufficient to afford the hospital fair notice that the plaintiff's claims were not limited to *medical* malpractice,[3] but also both the hospital and the judge were apprised of additional details of her claims, including the assertion, not specified in her complaint, that the

---

[3]In a section of her complaint entitled "Bournewood Hospital Misled and Falsely Imprisoned Plaintiff," paragraph 42 states: "Upon her admission, the hospital asked Plaintiff to sign certain admission papers. Given her blurred vision . . . she could not read the papers. She thus asked the [hospital] staff what she was signing. Plaintiff was informed that she was signing paperwork which stated that she was voluntarily asking to be admitted to the hospital. Plaintiff then asked whether there were a minimum number of days that she would have to stay in the hospital. The hospital falsely told her 'no.' Trusting what Bournewood told her, she signed."

Paragraph 45 states that her stay was extended because she was misled into signing other paperwork about the terms of her discharge.

hospital violated the requirements of G. L. c. 123, § 11.[4]

Prior to the convening of the medical malpractice tribunal, the hospital filed a motion for summary judgment to dismiss the claims in counts III (false imprisonment), VI (negligent infliction of emotional distress), and VII (intentional infliction of emotional distress).[5] In her opposition to the motion, and again in her motion subsequent to the determination of the tribunal, the plaintiff claimed that, contrary to the requirements of G. L. c. 123, § 11, she was formally admitted into the hospital either without, or at the least before, a psychiatric admission assessment. Her claim of false imprisonment is also based on her assertion that the hospital misled her into believing that she could leave at the time of her choosing and failed to inform her of a three-day notice requirement contained in the application for "conditional voluntary admission" (see note 4, *supra*).[6]

---

[4]General Laws c. 123, §§ 10 and 11, provide for two kinds of voluntary commitment to a mental health facility. If a person commits herself to a facility under what the regulation terms a "voluntary admission," 104 Code Mass. Regs. § 27.06 (2001), she "shall be free to leave such facility at any time" without prior notice, except that the facility superintendent may restrict departure to normal weekday working hours. G. L. c. 123, § 11, inserted by St. 1986, c. 599, § 38. If a person commits herself under what the regulation terms a "conditional voluntary admission," 104 Code Mass. Regs. § 27.06, the superintendent may require that she "give three days written notice of [her] intention to leave or withdraw." G. L. c. 123, § 11.

General Laws c. 123, § 11, as amended by St. 2000, c. 249, § 3, in relevant part provides: "Before accepting an application for . . . admission where the superintendent may require three days written notice of intention to leave or withdraw [i.e., conditional voluntary admission], the admitting or treating physician shall assess the person's capacity to understand that: (i) the person is agreeing to stay or remain at the hospital; (ii) the person is agreeing to accept treatment; (iii) the person is required to provide the facility with three days written advance notice of the person's intention to leave the facility; and (iv) the facility may petition a court for an extended commitment of the person and that he may be held at the facility until the petition is heard by the court. If the physician determines that the person lacks the capacity to understand these facts and consequences of hospitalization, the application shall not be accepted."

Title 104 Code Mass. Regs. § 27.06(6) requires that "[p]rior to admitting a person on conditional voluntary admission status, the admitting personnel shall inform such person of the three day notice requirements" in § 11.

[5]The hospital's motion was never acted upon.

[6]The application signed by the plaintiff, entitled "Application for Care and Treatment on a Conditional Voluntary Basis, M.G.L. Chapter 123, Sections 10

In her introduction to her offer of proof to the tribunal, the plaintiff specifically stated that her claims against the defendants "include more than her medical malpractice claims," mentioned her claims of false imprisonment and intentional and negligent infliction of emotional distress, and pointed out that the jurisdiction of the tribunal extends only to the medical aspects of her claims.

In an affidavit, which was part of the offer, the plaintiff, in addition to detailing numerous events that in her view amounted to medical malpractice, set forth the following material relevant to her nonmedical claims. Expanding on the substance of paragraphs 42 and 45 of her complaint, see note 3, *supra*, she stated that upon her arrival at the hospital on October 1, 2001, a woman, who did not identify herself as a physician, took her into an office where the woman processed the plaintiff's admission. The woman took down the plaintiff's personal and insurance information and asked the plaintiff to sign a document (application), see note 6, *supra*, which the plaintiff did not read because of her blurred vision. From what she was told by hospital staff on the day of her admission, the plaintiff understood that she would be able to leave the hospital as she chose.

"After completing [the plaintiff's] admission," the woman escorted the plaintiff to an anteroom where her belongings were searched. She was then taken by the woman and a nurse to a small room where the plaintiff was undressed and her clothing was searched. Thereafter, she was taken into the ward, Dodge I, and shown her room and bed. Only after these admission procedures were completed was the plaintiff seen by a woman who took the plaintiff's medical and psychiatric history. The plaintiff does not recall meeting the doctor whose notes appear on the hospital records (Dr. Nguyen)[7] or any other male physician on the day of her admission.

& 11," and which was part of the offer of proof to the tribunal, states in part: "I realize that when I want to leave the facility, I must give written notice to the Superintendent of the facility, who may delay my departure for up to three days (excluding Saturday, Sunday and holidays)."

[7]The hospital admission note of October 1, 2001, at 2:50 P.M., states, "Admission note — 47 yr old caucasian female accepted on Dodge I . . . . Pt [patient] arrives at the end of shift. Personal search completed [with] no contraband found. Pt is at present in day room, awaiting admission assessment

The plaintiff stated in her affidavit that although she wanted to leave the hospital the morning after her admission, as a result of being misinformed prior to signing the application and later again by not being properly informed of the three-day requirement, she was forced to remain at the hospital for several days.

Because the action was dismissed for failure to file a bond, and not under Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974), our review of the dismissal is limited to whether the claims dismissed were "medical." "The tribunal procedure . . . is appropriate only where there is an 'issue of *medical* "malpractice, error or mistake" ' (emphasis in original)." *Leininger v. Franklin Med. Center*, 404 Mass. 245, 248 (1989), quoting from *Little*, 376 Mass. at 577. In the view of the majority of the panel, the false imprisonment claim — that the plaintiff was admitted under misleading circumstances and without following the procedures of G. L. c. 123, § 11, for proper admission — does not present an issue of "medical malpractice, error or mistake."[8]

In *Leininger, supra* at 248, the Supreme Judicial Court held

---

pending arrival 3-11 shift." A later note of Dr. Nguyen dated October 1, 2001, but without indicating a time, states, insofar as legible, "47 yr w.g. [with diagnosis] was [illegible] admitted for manic behavior. Evaluation done. Report dictated [illegible] Nguyen, md."

[8]Whether a claim is medical or nonmedical is not a question appropriate for tribunal procedure. That question is for the court to decide. See *Koltin* v. *Beth Israel Deaconess Med. Center*, 62 Mass. App. Ct. 920, 920 (2004) (whether a medical provider has a duty to continue care once undertaken is a question of law appropriate for a court, not a malpractice tribunal). See also *Robbins* v. *Orlando, H.M.A., Inc.*, 683 So. 2d 664, 664 (Fla. Dist. Ct. App. 1996) (whether the false imprisonment claim arises "out of the rendering of, or the failure to render, medical care or services" under the relevant Florida statute is up to the court to decide).

Because of *Leininger* v. *Franklin Med. Center*, 404 Mass. 245, 245-246 (1989), the dissent acknowledges that if the parties had stipulated that the plaintiff was assessed only after admission, the tribunal would have been without jurisdiction over the false imprisonment claim. See *post* at 719-720. The dissent, however, finds the plaintiff's assertion that she was admitted prior to assessment "unsupported" and "based on nothing more than her conjecture and surmise." *Post* at 721. Relying on that finding, the dissent concludes that the plaintiff failed to prove that the tribunal lacks jurisdiction over her claims. Aside from the issue of who has the burden to show jurisdiction, a question we do not reach, we consider that unless a claim is frivolous — which is not the case here — the strength or weakness of the evidence supporting the claim does not determine jurisdiction. In this case the jurisdictional question is whether the claim involves "*medical* 'malpractice, error or mistake.' " *Lein-*

that a claim of failure to follow the requirements of G. L. c. 123, § 12 (involuntary commitment), by committing the plaintiff to a mental health facility without an examination was not a medical claim that should have been referred to a medical malpractice tribunal. Failure to comply with the provision of the statute was not a medical decision. Accordingly, the court held that the plaintiff's complaint should not have been screened by a tribunal; the court vacated the judgment dismissing the action because of the plaintiff's failure to post a bond. The *Leininger* court stated, "We have discerned a strong legislative intent that the tribunal 'should evaluate only the medical aspects of a malpractice claim.' " *Id.* at 247-248, quoting from *Salem Orthopedic Surgeons, Inc.* v. *Quinn,* 377 Mass. 514, 521 (1979).

The claims of the plaintiff in *Leininger, supra* at 246, were for violation of her civil rights under G. L. c. 12, § 11I, for false imprisonment, and for intentional infliction of emotional distress. At the hearing before the *Leininger* tribunal the plaintiff asserted that those claims were established by her involuntary commitment without following the statute. *Id.* at 247. The false imprisonment and emotional distress claims of the plaintiff in the case at bar are sufficiently similar to the claims in *Leininger* for us to conclude that they, too, do not present an "issue of *medical* 'malpractice, error or mistake.' " 404 Mass. at 248, quoting from *Little,* 376 Mass. at 577. See *Garcia* v. *Psychiatric Insts. of America, Inc.,* 638 So. 2d 567, 567 (Fla. Dist. Ct. App. 1994) (false imprisonment and battery claims against doctor and hospital governed by tort statute of limitations rather than

---

*inger, supra* at 248, quoting from *Little,* 376 Mass. at 577. In other words, the issue is whether the following questions are medical ones: (1) was there a violation of the statute because of a failure to assess the plaintiff before admitting her?; and (2) was there a misrepresentation as to the three-day notice requirement or was there a failure to give notice of this requirement in violation of the regulation (see note 4, *supra*)? These are the questions that the majority of the panel consider nonmedical and determine that the plaintiff may pursue in her action without a bond. At trial, the plaintiff will have the burden of persuading the fact finder that the misrepresentation was made, or that the admission preceded the assessment. Whether she succeeds is not for the appellate court at this juncture. See generally 2 Moore's Federal Practice § 12.30[2], at n.5.1 (3d ed. 2006), and 5B Wright & Miller, Federal Practice & Procedure § 1350, at 207-208 (3d ed. 2004), pointing out the distinction between the question of jurisdiction and the merits. If they are intertwined, deferral until trial or other proceeding is the method of resolution.

shorter medical malpractice statute of limitations). The plaintiff's nonmedical claims center on the allegation that she was misled as to the terms of her admission and discharge and that she was not assessed until after her admission in violation of the statutory requirement. As in *Leininger,* she does not, with respect to these claims, urge that the hospital was negligent or mistaken by reason of its *medical* judgment. Contrast *Johnston* v. *Stein,* 29 Mass. App. Ct. 996, 997 (1990) (where the misrepresentation was of a medical nature).

Because the foregoing claims of the plaintiff do not involve the medical aspects of a malpractice claim, the judgment insofar as it dismissed those claims is to be vacated and the case remanded to the Superior Court for further proceedings thereon consistent with this opinion.[9]

*So ordered.*

MEADE, J. (dissenting). In its decision to partially vacate the dismissal of the complaint, the majority has carved out the plaintiff's counts that alleged false imprisonment and intentional and negligent infliction of emotional distress. In so doing, the majority has resurrected what it describes as nonmedical claims over which the tribunal should not have exercised jurisdiction. In my view, however, the substance of these claims relates to the professional and medical judgment of the hospital, which properly placed them before the tribunal. Because the majority's conclusion condones the plaintiff's use of conjecture and surmise to negate the tribunal's jurisdiction and thereby contravenes the purpose of G. L. c. 231, § 60B, I respectfully dissent.

*Standard of review.* The majority conducts its analysis based on the allegations in the complaint, an unadjudicated motion for summary judgment, and the plaintiff's offer of proof to the tribunal. The majority states that it is not applying the standard

___

[9]On remand to the Superior Court, the plaintiff's claims for infliction of emotional distress and false imprisonment shall, of course, be limited to claims arising from the failure, if any, to assess the plaintiff before admission and from the failure, if any, to inform her of the three-day notice requirement prior to admission.

under Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974), for dismissal of a complaint, but instead is merely reviewing whether the claims are "medical." See *ante* at 713. In application, however, what the majority does is very much akin to the rule 12(b)(6) standard. That is, the majority fully indulges the plaintiff's allegations without regard for the proper assessment of the competency of the proof under a jurisdictional analysis. As a result, the majority has relegated the tribunal's jurisdiction to a matter of pleading.

The question of jurisdiction in this context is properly reviewed under Mass.R.Civ.P. 12(b)(1), 365 Mass. 754 (1974). This standard is better suited for issues related to the tribunal's jurisdiction because a judge may consider documents and other materials outside the pleadings, see *Callahan* v. *First Congregational Church of Haverhill*, 441 Mass. 699, 710 (2004); *Wooten* v. *Crayton*, 66 Mass. App. Ct. 187, 190 n.6 (2006), such as an offer of proof under G. L. c. 231, § 60B. When the materials submitted present a "factual challenge" to jurisdiction (as opposed to raising the legal sufficiency of uncontested jurisdictional facts), the plaintiff's allegations are given no presumptive weight, and the court must decide the jurisdictional question by resolving the factual disputes between the parties. *Callahan, supra* at 710-711. See *Salem Orthopedic Surgeons, Inc.* v. *Quinn*, 377 Mass. 514, 519-520 (1979); *Valentin* v. *Hospital Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001). Because the plaintiff challenged the tribunal's assertion of jurisdiction, she had the burden to prove the facts that deprived it of that jurisdiction. *Hiles* v. *Episcopal Diocese of Mass.*, 437 Mass. 505, 515-516 (2002). See *Callahan, supra* at 710.

In some instances — like those presented here — the jurisdictional facts may be inextricably intertwined with the claim itself so that a court may choose to defer resolution of the jurisdictional issue until the matter is heard by the tribunal.[1] See

---

[1]Deferring resolution of jurisdiction until after trial rather than after the tribunal's review, as the majority suggests, see *ante* at note 8, would make sense if this were a typical jurisdiction question, but it is not. The Legislature enacted § 60B to discourage frivolous claims and reduce insurance costs. See *Austin* v. *Boston Univ. Hosp.*, 372 Mass. 654, 655 n.4 (1977). Forcing health care providers to trial over a matter that time demonstrates should have been

*Valentin, supra* at 363 n.3.[2] As discussed below, the critical facts the plaintiff presents relative to the resolution of the tribunal's jurisdiction are, at best, contradictory, and thereby present a dispute.

When the judge determined that the entire complaint was subject to the tribunal's jurisdiction, she did not make subsidiary findings in connection with her ruling.[3] Because there was no evidentiary hearing and the facts related to jurisdiction were presented in documentary form, we are properly situated to analyze the record to determine if the findings implicit in the judge's ruling were supported. See *Commonwealth* v. *Gaulden,* 383 Mass. 543, 547 (1981); *Rae F. Gill, P.C.* v. *DiGiovanni,* 34 Mass. App. Ct. 498, 505 n.6 (1993). See also *Bluhm* v. *Peresada,* 5 Mass. App. Ct. 766, 766 (1977) ("[b]ecause all the evidence is documentary, we are in as good a position as the probate judge was to decide questions of fact"). Our review of the judge's ultimate legal conclusion on jurisdiction is de novo. *Valentin, supra* at 365.

*Discussion.* A medical malpractice tribunal has jurisdiction over actions for "malpractice, error or mistake against a provider of health care." G. L. c. 231, § 60B, inserted by St. 1975, c. 362, § 5. The breadth of this language indicates that the Legislature intended that all "treatment-related" claims be referred to medical malpractice tribunals. *Little* v. *Rosenthal,* 376 Mass. 573, 576 (1978). This is also supported by the legislative history of § 60B, which reveals that "the Legislature declined to restrict the tribunal's jurisdiction to 'every action of

---

screened out by a tribunal fails to honor that purpose. In contrast, permitting intertwined matters to be screened by the tribunal does not leave an aggrieved plaintiff without a remedy. Indeed, such a plaintiff may post the bond and proceed with what they believe to be a meritorious claim. See G. L. c. 231, § 60B.

[2] In an ordinary case, in conjunction with a motion to transfer a case to the tribunal, a judge should resolve up front any issues of fact necessary to determine the appropriateness of the tribunal's jurisdiction. In conducting this inquiry, the judge enjoys broad authority to order discovery, to consider matters outside the pleadings, and to hold an evidentiary hearing on the question of jurisdiction if the judge so chooses. See *Valentin,* 254 F.3d at 363. See also *Wooten,* 66 Mass. App. Ct. at 190 n.6.

[3] If the judge had made findings, on appeal those findings could be set aside only if they were clearly erroneous. *Valentin,* 254 F.3d at 365. See *Barboza* v. *McLeod,* 447 Mass. 468, 469 (2006).

tort or breach of contract.' " *Ibid.* Instead, it chose language "which evinces an intent that every case involving medical malpractice be appraised by a § 60B screening tribunal. 'There is no apparent exception.' " *Ibid.*, quoting from *Austin* v. *Boston Univ. Hosp.*, 372 Mass. 654, 660 (1977).

Because the statute does not textually define what constitutes an "action for malpractice, error or mistake," *Brodie* v. *Gardner Pierce Nursing & Rest Home, Inc.*, 9 Mass. App. Ct. 639, 641 (1980), it is appropriate for us to look at what the Legislature was trying to remedy or address when it was enacted. See *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934) ("a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated"). "The purpose of § 60B, as stated in the preamble to St. 1975, c. 362, which established the tribunal, was 'to guarantee the continued availability of medical malpractice insurance.' " *Brodie, supra.* To achieve that end, the statute is designed "to discourage frivolous claims whose defense would tend to increase premium charges for medical malpractice insurance." *Ibid.*, quoting from *Austin, supra* at 655 n.4.

In addition to the legislative purpose of the tribunal, our cases highlight several factors relevant to whether the complained-of acts fall within a tribunal's purview. These factors include (1) whether medical or professional judgment or competence was exercised, see *Santos* v. *Kim*, 429 Mass. 130, 133-134 (1999); see also *Leininger* v. *Franklin Med. Center*, 404 Mass. 245, 248 (1989); (2) whether the claim is "treatment-related," even if not a traditional malpractice claim, see *Lambley* v. *Kameny*, 43 Mass. App. Ct. 277, 282 (1997), quoting from *Little, supra*; and (3) whether "the same set of facts supports both" the malpractice and allegedly nonmedical claims, see *Little, supra* at 577; *Lambley, supra* at 281 n.8. An examination of these factors (none of which is conclusive), against the legislative backdrop of § 60B, leads to the conclusion that the judge here properly resolved the question of jurisdiction.

After the tribunal found the plaintiff's evidence insufficient, a Superior Court judge clarified that "all of the plaintiff's claims are based on 'malpractice, error or mistake' by a health care provider in the course of providing medical treatment, and that all of the plaintiff's claims are therefore subject to the statutory malpractice tribunal screening procedure."[4] Arguing otherwise, the plaintiff claims that the hospital falsely imprisoned her by failing to comply with the statutory requirements for voluntary hospitalization under G. L. c. 123, § 11.[5] In particular, she claims that the hospital failed to conduct a medical assessment of her prior to admitting her on a conditional voluntary basis. See G. L. c. 123, § 11 (physician's assessment required before conditional voluntary admission). See also 104 Code Mass. Regs. § 27.06 (2001). As a result, she claims that the hospital failed to provide her with adequate information about the terms of her admission and the mechanism to occasion her discharge, i.e., the three-day notice, and thereby prevented the speedier release she desired. This claim, the plaintiff maintains, is outside the tribunal's jurisdiction.

The linchpin of the plaintiff's false imprisonment claim, and the key jurisdictional fact upon which her case relies, is that Dr. Nguyen conducted the plaintiff's medical assessment *after* she was admitted as a patient. In support of her allegations on this point, the plaintiff's primary source of proof was her own affidavit. In her affidavit, she stated that after her admission application was completed, a woman, who was "either a nurse or a doctor," took her medical and psychiatric history. The plaintiff did not recall meeting Dr. Nguyen.

As discussed more fully below, if the parties had stipulated

---

[4]Even though the judge reached this conclusion based on the allegations in the complaint alone, this court is free to affirm the judge's ultimate decision through a route not traveled below. See *Wooten,* 66 Mass. App. Ct. at 190 n.6 (resolution of jurisdiction under the wrong standard could still be affirmed on appeal). See also *Aetna Cas. & Sur. Co.* v. *Continental Cas. Co.,* 413 Mass. 730, 734-735 (1992) (a decision may be affirmed on appeal if the judge is "right for the wrong reason, even relying on a principle of law not argued below").

[5]The plaintiff's complaint did not make specific mention of G. L. c. 123, § 11, or how it was violated. Rather, this "claim" was made in the plaintiff's opposition to the hospital's motion for summary judgment, a motion that was never decided.

that the plaintiff was admitted prior to an assessment being conducted, then the tribunal would have been without jurisdiction and the plaintiff would have presented a *Leininger*-type claim that would have lived another day in Superior Court. See *Leininger*, 404 Mass. at 245-246. However, her bald assertions alone (including the averment that she did not recollect meeting Dr. Nguyen)[6] were entitled to no presumptive weight, see *Callahan*, 441 Mass. at 711, and did not require the judge, assessing jurisdiction, to conclude that she was "admitted" before her assessment was conducted. Because the plaintiff has no personal knowledge of when her admission was completed, her affidavit on this point is insufficient.

In addition to the plaintiff's affidavit, her offer of proof contained the hospital's progress notes that indicate that the plaintiff was "accepted" at 2:50 P.M., and was waiting in the "day room" for the arrival of the 3:00 P.M. shift for her admission assessment. The next progress note indicates that Dr. Nguyen completed that assessment on the day she entered the hospital.[7]

Therefore, the plaintiff's proof of the critical fact of when the

---

[6]Even assuming that the plaintiff's recollection regarding Dr. Nguyen is accurate, her argument assumes that the assessment had to be done in person. For involuntary admissions, this is not true. See *Reida* v. *Cape Cod Hosp.*, 36 Mass. App. Ct. 553, 554 (1994) (involuntary commitment under G. L. c. 123, § 12, does not require an in-person, "hands-on" psychiatric examination). In fact, such an examination may be based on observation of the patient in conjunction with medical records and other information supplied to the doctor, such as the plaintiff's medical and psychiatric history that was taken here. See *id.* at 555. Although it would involve a matter of professional judgment, there is nothing in § 11 for voluntary commitments that requires a different conclusion.

[7]As part of Dr. Nguyen's assessment, he completed the "Acceptance/ Rejection by the Facility" portion of the application form. In that form, he provided affirmative responses to all of the following questions relative to the plaintiff: (a) she "has been diagnosed with mental illness, as defined in 104 [Code Mass. Regs. §] 27.05(1)"; (b) she "is in need of care and treatment for this mental illness"; and (c) she "is in need of hospitalization (i) for such care and treatment *or* (ii) to prevent serious harm due to the absence of a more appropriate placement alternative." Dr. Nguyen also determined that the hospital was "suitable for such care and treatment," and that the plaintiff understood (a) that she was "agreeing to stay and receive treatment at this facility"; (b) that she "must sign a three-day notice of [her] intention to leave"; and (c) that she "may or may not be allowed to leave without a court hearing." Dr. Nguyen then accepted the plaintiff's application for conditional voluntary

assessment occurred is at best contradictory, which results in a dispute as to when the assessment was conducted. Under the rule 12(b)(1) standard, where the plaintiff's allegations carry no presumptive weight, there is no imperative to resolve this dispute in her favor. However, by so doing, the majority credits the plaintiff's unsupported claim that she was admitted *prior* to the assessment, which is based on nothing more than her conjecture and surmise.[8] Given that posture, the plaintiff has failed to prove the key fact that would deprive the tribunal of jurisdiction.[9] If it were otherwise, any similarly situated plaintiff could merely allege the absence of a timely assessment and avoid the tribunal's screening function altogether.[10]

---

hospitalization, signed the form, and dated it October 1, 2001, i.e., the day she arrived.

As is apparent, the components of this assessment clearly required the exercise of medical judgment. Even if the initial intake procedure was administrative and nonmedical, see note 11, *infra*, the assessment comprised an intervening medical judgment that superseded any erroneous nonmedical action by the hospital staff. In other words, contrary to the majority's view, see *ante* at note 8, the cause of the plaintiff's admission to the hospital was Dr. Nguyen's medical judgment.

[8]Similarly, under Mass.R.Civ.P. 12(b)(2), 365 Mass. 755 (1974), "plaintiffs may not rely on unsupported allegations in their pleadings to make a prima facie showing of personal jurisdiction." *Boit* v. *Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992). See *Chlebda* v. *H.E. Fortna & Brother, Inc.*, 609 F.2d 1022, 1024 (1st Cir. 1979) (believing that jurisdictional allegations must be taken as true is an "elementary mistake").

[9]The avenue this particular plaintiff must travel to avoid the tribunal's jurisdiction is quite narrow. Contrary to the majority's view, see *ante* at note 8, appellate review of that question requires an evaluation of the competency of the proof that supports her claim, which is different in kind from an evaluation of the strength or weakness of her claim. In other words, the former inquiry evaluates whether there is a claim at all, whereas the latter assesses whether it is likely to succeed.

[10]A similar pleading concern was addressed in *Salem Orthopedic Surgeons, Inc.*, 377 Mass. at 519-520, where the court explained that some types of malpractice actions may not become apparent until late in the judicial proceedings because their existence will turn on a question of fact. For instance, in that case, where the claim was for breach of contract to produce a certain medical result, the existence vel non of an expressed promised result was a question of fact. Because a plaintiff may simply plead the existence of such a promise and thereby possibly create a frivolous suit with considerable nuisance value, it was appropriate for all such suits to be screened first by a tribunal to resolve such issues. *Id.* at 520. Doing so honors "the legislative purpose of discouraging 'frivolous claims whose defense would tend to increase premium

From a review of the plaintiff's materials, the following al-
legations emerge. During part one of the admission process, the
hospital *mistakenly* or *erroneously* gave the plaintiff faulty in-
formation relative to the flexibility of her tenure there.[11] In part
two, Dr. Nguyen was required to exercise his *medical judgment*
to determine the propriety of her admission. Specifically, Dr.
Nguyen determined that the plaintiff suffered from a mental ill-
ness, that she needed "care and treatment," and that she under-
stood the terms of her admission, including the discharge pro-
cedures. See note 7, *supra.* From there, the plaintiff attributes
several *mistakes* to the hospital, caused by the *errors* the hospital
included in her medical history, that led the hospital to commit
her to the wrong type of ward,[12] to misapprehend her thyroid
condition, and to overmedicate her.

In essence, the plaintiff claims that the hospital's misinforma-
tion and errors, its medication decisions, and Nguyen's sub-
standard care and treatment all led to the plaintiff's prolonged
stay. Indeed, the introduction to her complaint specifically al-
leges that all the harms she suffered came as a result of her
"mismanaged care." See *DiGiovanni* v. *Latimer*, 390 Mass.
265, 272-273 (1983) (plaintiff's claim was properly screened by

charges for medical malpractice insurance.' " *Ibid.*, quoting from *Austin*, 372
Mass. at 655 n.4. See note 1, *supra.* The same should hold true here.

[11]The plaintiff does not claim that this misrepresentation, by itself,
constituted false imprisonment. Indeed, she does not allege that she even at-
tempted to leave before her second day at the hospital. Even if she did claim
that she was falsely imprisoned at this point, she would be alleging a mistake
or error in professional judgment by a health care provider, i.e., an employee
of the hospital working within the scope of her employment. See G. L. c. 231,
§ 60B. Specifically, the admitting or treating physician was required to
determine if the plaintiff was "competent," which in the context of a
conditional voluntary admission requires a determination whether the patient
understands that she is in a facility for treatment, understands the three-day
notice requirement, and understands the facility director's right to file a peti-
tion for commitment and thereby retain her at the facility. See 104 Code
Mass. Regs. § 27.06(1)(b), (1)(c), (1)(d)(2) (2001). Because the plaintiff's al-
legation relates to mistakes or errors in the exercise of professional judgment,
the claim — if it had been made — would also have been within the tribunal's
jurisdiction. See *Santos* v. *Kim*, 429 Mass. at 133-134.

[12]The hospital erroneously believed that the plaintiff arrived involuntarily
courtesy of the police, and that she had a history of substance abuse. As a
result of these errors, the plaintiff was assigned to a "lock-down" ward which
was reserved for violent or substance-abusing patients.

the tribunal where the issue of damages and the causal connection to the harm suffered presented medical questions). Because we were obliged to look at the substance of the claim rather than the labels attached to it, *Lambley*, 43 Mass. App. Ct. at 280, I conclude that the plaintiff's false imprisonment claim was treatment-related. See *Johnston* v. *Stein*, 29 Mass. App. Ct. 996, 997 (1990) (court looked to the "core" of a claim of wilful misrepresentation to determine it was treatment-related). Buttressing this conclusion, and especially relevant to the jurisdictional inquiry, is that the same core of facts supports both the plaintiff's malpractice claims and her "nonmedical" claims. See *Little*, 376 Mass. at 577.

The plaintiff's emotional distress claims fare even worse, even if the claims in her complaint are credited as the majority requires. Most telling of the appropriateness of the tribunal's jurisdiction is that her complaint specifically attributes these torts to the hospital's "medical care and treatment." In addition, the allegations that support these claims are virtually identical to those of her malpractice and false imprisonment claims. That is, the plaintiff claims that the same mistakes and errors in the hospital's diagnosis, medication, therapy, and its treatment of her constituted negligent and intentional infliction of emotional distress. In that light, I conclude that these claims were also treatment-related. See *Little*, *supra*; *Lambley*, *supra* at 281 n.8.[13]

In her effort to push her claims outside the tribunal's jurisdiction, the plaintiff likens her circumstances to those in *Leininger*, 404 Mass. at 245-246, where the plaintiff sued for false imprisonment and intentional infliction of emotional distress because the mental health facility failed to follow the requirements of the involuntary commitment statute, G. L. c. 123, § 12. In holding that the plaintiff's case should not have been

---

[13]The treatment-related nature of the plaintiff's claims is further borne out by the fact that in order for her to establish errors and mistakes in her diagnosis, medications, and treatment, she would undoubtedly need the opinion of a medical expert to support her claims. See *Harnish* v. *Children's Hosp. Med. Center*, 387 Mass. 152, 156 (1982) ("[w]hat the physician should know involves professional expertise and can ordinarily be proved only through the testimony of experts"). Contrast *Brodie*, 9 Mass. App. Ct. at 642 (an action for negligent maintenance of a nursing home stairway does not raise a question requiring expert medical evaluation).

screened by the medical malpractice tribunal, the Supreme Judicial Court held that the failure "to comply with the civil commitment statute was not a medical decision." *Leininger*, 404 Mass. at 248. Critical to that conclusion was the fact that the plaintiff did not claim that the defendants "were negligent or mistaken in terms of their medical judgment or treatment." *Ibid.* Indeed, at the core of the plaintiff's complaint was the *undisputed* fact that a doctor failed to conduct a medical examination of her prior to her commitment. *Id.* at 247.

The instant plaintiff's claims stand on a very different footing. Not only did the plaintiff's offer of proof fail to show that there was no assessment prior to her commitment, but the gravamen of her complaint also centers on the mistakes in that assessment and the ramifications of the medical decisions that flowed from those mistakes. See *DiGiovanni, supra.* That is, the plaintiff claims that the hospital did a poor job in carrying out the commitment process and her subsequent care. That claim does not eclipse the fact that in so doing, medical and professional judgment was used to make treatment-related decisions. This sets the plaintiff's claim apart from *Leininger.* Because the parties in *Leininger* agreed that no examination took place, the court necessarily found that medical judgment played no role in the unlawful commitment of the plaintiff. Indeed, *Leininger* does not stand for the proposition that the admission process never involves medical judgment; that question was simply not before the court. By contrast, evaluating the admission decisions and processes in this case required a review of instances of medical judgment, which fell within the tribunal's jurisdiction. *Leininger* offers the plaintiff no assistance.

The fabric of the plaintiff's claims contains the same common threads of medical judgment related to treatment and care that appear in other cases where the tribunal properly exercised jurisdiction. Compare *Little*, 376 Mass. at 575-577 (tribunal properly exercised jurisdiction over a complaint which alleged that medical care violated G. L. c. 93A as an unfair trade practice); *Salem Orthopedic Surgeons, Inc.*, 377 Mass. at 517-518 (an action for breach of contract to produce a medical result was properly screened by tribunal); and *Lambley*, 43 Mass. App. Ct. at 279-282 (job applicant's defamation and

interference with advantageous business relations suit against a psychiatrist, who found him unfit for police work, was properly screened by the tribunal), with *McMahon* v. *Glixman*, 379 Mass. 60, 67-68 (1979) (whether plaintiff's claim was barred by the statute of limitations was not within the tribunal's jurisdiction); *Flagg* v. *Scott*, 9 Mass. App. Ct. 811, 812 (1980) (whether the individual defendant was a person for whose conduct the hospital would be responsible was beyond the competence of the tribunal); and *Koltin* v. *Beth Israel Deaconess Med. Center*, 62 Mass. App. Ct. 920, 920-921 (2004) (claims of assault and battery, false imprisonment, and intentional infliction of emotional distress, based upon an alleged beating by hospital security guards, were not properly before the tribunal).

The judge properly found the entire complaint to be within the tribunal's jurisdiction. The standard of review, the legislative history of § 60B, and appellate precedent on the matter, together with the factors to be weighed in considering whether jurisdiction exists, all require the conclusion that the plaintiff's claims are treatment-related and were correctly before the tribunal. The majority's decision to the contrary will encourage future plaintiffs to engage in artful pleading designed to avoid the tribunal's function and thwart the statute's purpose. I would affirm the dismissal of the entire complaint.